## TSESMELIS v. SINTON STATE BANK et al.
### No. 1369—5953.

Commission of Appeals of Texas, Section B.
Oct. 26, 1932.

W. B. Moss, of Sinton, and Lloyd & Lloyd, of Alice, for plaintiff in error.

Jas. G. Cook, of Sinton, for defendants in error.

RYAN, J.

This suit was filed on January 7, 1930, by the Sinton State Bank against Gust Tsesmelis to recover upon a promissory note for $725 with 10 per cent. interest from its date and the usual 10 per cent. attorney's fees.

Simultaneously with the filing of the suit, a writ of attachment, predicated upon affidavit and bond therefor, was issued and levied upon a lot in Sinton, Tex., and a farm near Sinton, belonging to Tsesmelis.

The affidavit for attachment was made by J. F. Odem, as agent for the bank, and the bond was signed, "Sinton State Bank of Sinton, Texas, Principal, by J. F. Odem, V. P. & Agt.," and "J. F. Odem, Fred Johnson, Sureties."

The defense was that the obligation had been extended and was not then due—that the suit was prematurely brought.

Quashal of the attachment proceedings was prayed on the ground that because of such extension there was nothing then due and therefore the affidavit was false and no ground for the attachment existed.

Defendant below also by cross-action claimed $12,500 actual damages and $5,000 exemplary damages based upon the alleged wrongful issuance and levy of the attachment and for the wrongful publication and circulation of the affidavit therefor, the contents of which were alleged to be libelous.

The cross-action asserted against the bank and Odem and Johnson (sureties on the attachment bond) was based upon their several and individual acts in connection with the institution of the suit, the procuring of the writ of attachment and publication of the alleged libelous affidavit, as well as their liability by reason of their having signed the attachment bond.

The trial court sustained exceptions to and dismissed the cross-action upon the defendant's refusal to amend. A jury chosen to hear the evidence submitted on the plea in abatement—that the suit was prematurely brought—was peremptorily instructed to return a verdict against defendant thereon.

The motion to quash the attachment proceedings was overruled, and final judgment was rendered on March 28, 1930, in favor of the bank for the sum of $748.32 principal and interest due on the note in controversy, and the further sum of $74.83 attorney's fees, ag-gregating the sum of $823.15, with interest from date of judgment at the rate of 10 per cent. per annum and costs of suit, and foreclosure of the attachment lien.

Said judgment was affirmed by the Court of Civil Appeals. 35 S.W.(2d) 451.

Opinion.

First. To support a contention that the payment of a negotiable instrument has been extended, there must exist all the elements essential to the execution of a contract (6 Tex. Jur. p. 826), and the agreement for the extension must be for a definite time and mutually bind the parties, payor and payee, the one to forbear suit during the time of extension, and the other his right to pay the debt before the end of that time. Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128; Guerguin v. Boone, 33 Tex. Civ. App. 622, 77 S. W. 630.

In Austin Real Estate & Abstract Co. v. Bahn, 87 Tex. 582, 29 S. W. 646, 30 S. W. 430, it was said: "Here the creditor agrees to extend for one week, and the debtor agrees to pay within the week. He does not agree that he will not pay until the end of the week, or that in case he does pay he will pay interest for the entire period of the extension. Hence there was no consideration for the promise of the creditor. * * * It was the right of the company to pay at any time, notwithstanding Fain's promise, and hence there was no consideration to support that promise."

The basis of the claim for the alleged extension is a conversation with Odem, vice president of the bank, and a letter from him to plaintiff in error; a portion of the latter's testimony is as follows:

"That is the note I executed. It shows to have been made on August 15, 1929, and matured ninety days after date—on November 15, 1929. I had a conversation with Mr. Odem about this note after it matured. On the second day of December, 1929, I came to Sinton to pay the rent on a building I had rented from Mr. Odem and I gave him a check for $75.00 that paid the December rent, and he took the check and I said, 'I've got a note here that is due and I want to pay the interest and extend it a little while,' and he went and got the note and said, 'Well, we are not going to extend this note any longer because you are doing business with another bank here in town.' I told him I couldn't pay him right then because Mr. Sparks (President of the bank I am doing business with) was gone right then, and I would have to wait until he came back, that he wouldn't be back before the tenth, and when he came back I would see him and make arrangements and get the money and pay off the note, and he said, 'All right, you can pay the interest on this note and I will give you ten or fifteen days to get

the money.' So I didn't come back any more and on the 13th or 14th of December I got a letter from Mr. Odem. * * * I tore this letter up.' A day or two later I wrote them a letter and told them I couldn't get the money, that I would come to Sinton and see Mr. Sparks, and told him that I would pay him $100.00 in thirty days, $100.00 in sixty days, and $100.00 in ninety days. I got a letter from Mr. Odem about the 18th or 20th of the month."

Said letter, dated December 18, 1929, is as follows:

"With reference to your note of $725.00, since you state that you are unable to obtain credit we will expect a payment of $100.-00 at once and a similar amount thirty and sixty and ninety days. We do not care to extend the old note, but will hold the time of payment in abeyance as above stated.

"Yours very truly,

"J. F. Odem, Vice-President."

"A day or two after I got this letter I wrote the bank and told them I would pay the first $100.00 on January 1, 1930."

Several days later a check for $100 on the Commercial State Bank of Sinton, signed by Gust Tsesmelis and Jack Lymbery, was mailed to Mr. Odem. The check bore date January 6, 1930, and the postal mark on the envelope is stamped 6 p. m., January 7th. This check was received in the morning mail on January 8th and immediately returned to Tsesmelis in the following communication:

"We are in receipt today your check on the Commercial State Bank of Sinton, dated January 6, 1930, and payable to the order of J. F. Odem for $100.00, with the following notation on the check: 'For first note.' We are returning herewith your check for the reason that your note has been placed in the hands of our attorney for collection on which attorney's fees have accrued. You will therefore communicate with Mr. Jas. G. Cook, who is attending to the collection of your note for us.

"Yours very truly,

"J. F. Odem, Vice-President."

The above testimony shows a mere forbearance or indulgence on the creditor's part; the negotiations eventuated in no agreement of grace for any definite period of time, and therefore no valid contract of extension resulted. Kirby v. Am. State Bank (Tex. Com. App.) 18 S.W.(2d) 599, 63 A. L. R. 1528; International Shoe Co. v. Kaufman (Tex. Civ. App.) 270 S. W. 1109.

■ Tsesmelis testified also that he would have the right to pay the debt at any time; this of itself is fatal to the claim of extension. Dickson v. Kilgore State Bank (Tex. Com. App.) 257 S. W. 867; Ellerd v. Ferguson (Tex. Civ. App.) 218 S. W. 605; Neyland v. Lanier (Tex. Civ. App.) 273 S. W. 1022.

■ No valid extension of the note having been had, it was past due when the suit was filed. The note provided for payment of an additional 10 per cent. thereon, if placed in the hands of an attorney for collection, to be paid by the maker. No issue was made of its reasonableness and judgment was properly rendered for such attorney's fee. First Nat'l Bank of Eagle Lake v. Robinson, 104 Tex. 166, 135 S. W. 372; Lanier v. Jones, 104 Tex. 247, 136 S. W. 255; Brannin v. Richardson, 108 Tex. 112, 185 S. W. 562.

■ Second. Whether the matters stated in the affidavit for attachment be true, or not (they complying with the statutory requirements), can be reached only by plea and not by motion to quash.

■■ If a valid extension of the note had been shown and therefore the suit had been prematurely brought, the attachment proceedings would of course fall, but as said in Dwyer v. Testard, 65 Tex. 432, "the validity of the writ [of attachment] depends, not upon the truth of the facts stated in the affidavit, but upon the fact that they are so stated." To the same effect is the holding in Gimbel v. Gomprecht, 89 Tex. 497, 35 S. W. 470, 472, where it was said: "When the affidavit made by the plaintiff for attachment complies with the statute, and the writ is issued and levied, the lien of the attachment attaches to the property, and the court must foreclose it, although the allegations of the affidavit may not be true in fact."

The lien was properly foreclosed.

The defendant's answer alleged: (a) A general denial and specially that the suit was prematurely brought because of a claimed extension in time of payment, which contention has been disposed of adversely to him, as above stated; (b) by way of cross-action, that the affidavit for attachment is false and "not being content with filing such affidavit plaintiff and the sureties on his bond told other and divers persons of its contents and that they had sued defendant and attached his property" which constituted a libel "done in furtherance of the design and conspiracy to injure, libel and harass the defendant and to destroy and ruin his credit and business standing"; (c) that after the writ of attachment was levied, certain other parties offered to trade such property for other property belonging to them, which would have profited defendant in the sum of $2,500, but upon learning of the levy, refused to consummate the trade.

■ The mere levy of a writ of attachment upon real estate, not being attended with any disturbance of the possession, use, or enjoyment by the owner, will not authorize a recovery of actual or exemplary damages. Trawick v. Martin-Brown Co., 79 Tex. 460, 14 S. W. 564; Drew v. Ellis, 6 Tex. Civ. App.

464

507, 26 S. W. 95; Spillman v. Weston (Tex. Civ. App.) 200 S. W. 557; Oscar v. Sackville (Tex. Civ. App.) 270 S. W. 897; Seal v. Holcomb, 48 Tex. Civ. App. 330, 107 S. W. 916.

However, recovery may be had for such a levy, if wrongful, on a showing that it was the proximate cause of defeating an advantageous sale or trade of the property and the land subsequently depreciated in value, and that the deal was pending when the attachment was levied, or that the plaintiff in attachment had knowledge that a trade was about to be made, and that it was, after the levy, consummated without knowledge of the levy having been made. Where no contention is made that property depreciated in value subsequent to a levy thereon, no recovery may be had upon allegations that the attachment prevented a sale of the land and the application of the proceeds to the payment of the owner's debts or that the negotiation of a loan was prevented thereby. 5 Tex. Jur. p. 269.

Here, the allegation is that it was after levy of the writ that the defendant was approached by a third party to trade for other property. He made no allegation to the effect that any trade was pending at the time of the levy and that the bank had any knowledge thereof, nor that the property depreciated in value, nor that he had been disturbed in his possession.

We agree with the Court of Civil Appeals in their holding that the facts stated do not show a right to recover as for libel. The allegation was that the affidavit for attachment, wherein it is stated that defendant is about to convert his property or a part thereof into money for the purpose of placing it beyond the reach of his creditors, is false and untrue and its contents constitute libel, that said statement is derogatory of this defendant and wrongfully accuses him of things that are untrue, that plaintiff and cross-defendants have told other and divers persons of its contents, and that they had sued defendant and attached his property and have thereby published and made such libel known to divers persons—all done in furtherance of the design and conspiracy of plaintiff and cross-defendants to injure, libel, and harass the defendant and to destroy and ruin his credit and business standing.

The trial court correctly sustained exceptions thereto, and on declination to amend said cross-action, it was properly dismissed. Vacicek v. Trojack (Tex. Civ. App.) 226 S. W. 505; Linney v. Maton, 13 Tex. 449.

We are of opinion that the averments in the affidavit for attachment were privileged and cannot be made the basis of a suit for libel. As said in Runge v. Franklin, 72 Tex. 585, 10 S. W. 721, 724, 3 L. R. A. 417, 13 Am. St. Rep. 833, "where property is attacked upon false charges, * * * the law affords ample remedies * * * but not by a suit for libel."

Motions and affidavits filed in a civil case before a court having jurisdiction are absolutely privileged, provided the matter contained therein is either relevant or pertinent to the issue. 25 Cyc. 378.

Here, the bank complied with the statute, had the statutory affidavit made, and gave the statutory bond. We fail to see anything wrong in so doing.

But it is contended that the libel consisted, not in the making of the affidavit or in the proceedings themselves, but in the publication and dissemination thereof, and Baten v. Houston Oil Company (Tex. Civ. App.) 217 S. W. 394, is cited in support of such contention. It was there held: (1) That words spoken, written, or printed in the course of a judicial proceeding are privileged, when material, relevant and pertinent to the issues involved in the case; (2) the method of publication or circulation of a document otherwise privileged may deprive such document of its privileged character and transform it into a libel. But this must be properly alleged, which as we have seen above was not done. Runge v. Franklin, supra.

Third. Plaintiff in error contends that it was error for the trial court to award a greater rate of interest than 6 per cent. on the amount recovered as attorney's fees, and that such portion of the judgment should bear interest at the legal rate, only.

Article 5072, Rev. Stat. 1925, reads as follows: "All judgments of the courts of this State shall bear interest at the rate of six per cent per annum from and after the date of the judgment, *except where the contract upon which the judgment is founded bears a specified interest greater than six per cent per annum and not exceeding ten per cent per annum, in which case the judgment shall bear the same rate of interest specified in such contract and after the date of such judgment.*"

The defendant in error bank contends that the provision regarding attorney's fees is for a stated, liquidated sum of 10 per cent. and is incident to the main debt and so connected with it as to make it a part of the contract, and therefore the statutory provision that the judgment shall bear the same rate of interest specified in the contract should apply.

The obligation of the note is to pay the principal "with interest at ten per cent per annum from date until paid and ten per cent additional on amount of principal and interest unpaid, as attorney's fees, if placed in the hands of an attorney for collection."

It is clear that no separate, special agreement to pay interest on the attorney's fee as a separate item is contained in the note;

such agreement to pay interest at 10 per cent. per annum is referable only to the principal, eo nomine, and the contention of plaintiff in error must be sustained, unless the stipulation for an attorney's fee, when earned, is incident to the debt and so connected with it as to make it a part of the contract to pay ten per cent. interest.

In Washington v. First National Bank of Denton, 64 Tex. 4, it was held that attorney's fees provided for in the note sued on were incident to the main debt, resembling the interest agreed upon in the note. The court said: "As it is now the settled law of this state that the interest incorporated into a judgment, if above eight per cent [*the legal rate when said case was decided*], bears interest thereafter, and at the conventional rate, there can be no reason why the percentage allowed for attorneys' fees should not bear interest at the same rate. The right to recover interest upon interest after judgment at a conventional rate does not rest upon the ground that * * * interest shall be computed in this way. Hence the fact that there is no agreement that the attorneys' fees shall bear interest at a greater rate than eight per cent. cannot affect the question. * * * We think the court below properly allowed the whole judgment rendered to bear interest at twelve per cent. [*conventional* rate]."

In Krause v. Pope, 78 Tex. 478, 14 S. W. 616, judgment was rendered by the Supreme Court for the aggregate of principal, interest, and attorney's fees, and 10 per cent. per annum interest on such gross amount.

In Sanders v. City National Bank (Tex.) 12 S. W. 110, the judgment included principal, interest, attorney's fees as by the note provided, and protest fees, and was made to bear the same interest rate contracted for in the note. The Supreme Court, through Chief Justice Stayton, said there was no error in this.

In accord with the above holding is the Austin Court of Civil Appeals in Lyons v. Iron City Bank, 24 S. W. 304; the San Antonio Court of Civil Appeals in Carver v. J. S. Mayfield Lumber Co., 29 Tex. Civ. App. 434, 68 S. W. 711 (writ of error denied); the Eastland Court of Civil Appeals in Manes v. J. I. Case Threshing Machine Co., 295 S. W. 281, 283, and the Amarillo Court of Civil Appeals in Chenault v. Honaker, 261 S. W. 825.

In Stanton v. Security Bank & Trust Co. (Tex. Com. App.) 244 S. W. 593, relied on by plaintiff in error in support of his position, the Commission of Appeals found the cause of action as pleaded was twofold. Recovery was sought upon the note proper for a liquidated amount. On the other hand, recovery was also sought for an unliquidated amount based upon a pledge of collateral, containing a provision for liability for all protests, damages, costs, and interests and charges due upon the note there in controversy or in other liabilities, or in the execution of the power to sell the collateral, together with costs of collection including attorney's fees.

That case is clearly distinguishable from the present one. As said in Manes v. J. I. Case Threshing Machine Co., supra: "The opinion distinguishes that case from the ordinary note by stating that the attorneys' fees were not incident to the main debt or so connected with the principal of the note that an agreement to make the fee a part of the principal to draw like interest with it can be implied. In this case the provision regarding attorneys' fees is for a liquidated amount of ten per cent., and is clearly incident to the main debt, and so connected with it as to make it a part of the contract, and we can see no reason why the statutory provision that the judgment shall bear the same rate of interest specified in the contract should not apply."

Green v. Noah (Tex. Civ. App.) 24 S.W.(2d) 1113, is also relied on by plaintiff in error. This case cites Stanton v. Security Bank & Trust Co., supra, as authority for the proposition that only 6 per cent. interest may be allowed on that part of the judgment evidencing the attorney's fees. This, as we have shown above, is a misconception of the holding in the Stanton Case.

Where attorney's fees are included in a judgment, they bear interest at the same rate as the principal sum, is the conclusion arrived at by the editor of Encyclopedia of Law and Procedure, citing our Texas cases. 22 Cyc. 1521, 1568.

We are of the opinion that the judgments of the district court and Court of Civil Appeals are correct, and therefore recommend that they be affirmed.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.