In re Raymond Joseph BRINZER, a/k/a Dr. Raymond J. Brinzer, Debtor.

Raymond Joseph BRINZER, Plaintiff,

v.

PENNSYLVANIA STATE UNIVERSITY and Financial Collection Agencies, Inc., Defendants.

Bankruptcy No. 81–20295.
Adv. No. 82–0281.

United States Bankruptcy Court,
S. D. West Virginia.

June 29, 1982.

---

2. 28 U.S.C.A. § 1471.

3. 28 U.S.C.A. § 1478(b).

Fred D. Clark, and Stephen L. Thompson, Charleston, W. Va., for debtor, Raymond Joseph Brinzer.

G. Patrick Jacobs, Charleston, W. Va., for defendants, Pennsylvania State University and Financial Collection Agencies, Inc.

## OPINION

EDWIN F. FLOWERS, Bankruptcy Judge.

The Debtor has reopened this chapter 7 proceeding in order to restrain Pennsylvania State University [Penn State] and Financial Collection Agencies, Inc., from attempts to collect a student loan debt.

The Debtor holds a Ph.D. in education, academic curriculum and instruction from Penn State. While attending Penn State from 1973 to 1975, he borrowed money under the National Defense Student Loan Program. At the time of his bankruptcy filing on June 22, 1981, a substantial portion of this debt had not been paid. The Debtor listed this debt in his schedules and

received a bankruptcy discharge on August 22, 1981. Penn State has continued its efforts to collect the debt by employing Financial Collection Agencies, Inc., a commercial collection agency, and by withholding the Debtor's transcript. The Debtor alleges that the student loan debt was discharged and seeks an order requiring the respondents to show cause why they should not be held in contempt. In addition, the Debtor seeks an order requiring respondents to provide him with certified copies of his transcript.

Before the Court can determine whether the requested relief should be granted, it must establish whether the student loan was discharged.[1] The Bankruptcy Code provides:

> A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—
>
> (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; . . .

11 U.S.C. § 523(a)(8) (1978). Evidence of hardship resulting from the obligation was not strongly pressed and amounted to no more than mere financial adversity. There were not revealed to the Court such "unique circumstances to render it less likely, or likely only with extreme difficulty, or unlikely at all, that the [Debtor] will within the foreseeable future be able to honor his commitment." *New York State Higher Ed-*

---

1. Such a determination after closure of the case is not untimely inasmuch as the provision of the Code excepting such debts from discharge

is self-executing. S.Rep.No.95–989, 95th Cong., 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

*ucation Services Corp. v. Kohn (In re Kohn)*, 5 B.C.D. 419, 424 (Bankr.S.D.N.Y. 1979). The sole issue, therefore, is whether the loan "first became due" more than five years before the Debtor filed his voluntary bankruptcy petition on June 22, 1981.

The Debtor obtained the loan in this case through the National Defense Student Loan [NDSL] program.[2] In accord with applicable law at the time the loan was made, the promissory note required the payment period to commence nine months after the borrower ceased studies on at least a half-time basis. Respondent's Exhibit No. 1. *See* 20 U.S.C. § 1087dd(c)(1)(A) (1976). The Debtor completed classroom work on his doctorate on July 1, 1975, and entered a "dissertation phase" which he pursued while employed as a teacher. He completed his dissertation requirement in 1980 and received his doctor's degree. By the Debtor's calculation the note first became due nine months after July 1, 1975, or April 1, 1976, and thus more than five years had elapsed when he filed bankruptcy on June 22, 1981. According to Penn State, the Debtor was advanced the last funds on the loan on June 10, 1975; he failed to report to the loan office for an exit interview after he completed his classwork three weeks later on July 1, 1975, and made no objection to the repayment schedule forwarded to him which called for the first quarterly payment to be made June 1, 1977. Penn State calculated the nine-month grace period ran from June 1, 1976 to March 1, 1977. Respondent's Exhibit No. 3.[3] If the loan "first became due" on either March 1, 1977, the conclusion of the grace period according to Penn State, or June 1, 1977, the first payment date, five years had not expired on June 11, 1981, the date of bankruptcy, and

the debt is excepted from discharge. The Court accordingly must determine whether the loan "first became due" nine months after the Debtor completed his classroom work on July 1, 1975, or at the inception (or conclusion) of the grace period recorded by Penn State on the loan summary. Respondent's Exhibit No. 3.

Former law excepted student loans from bankruptcy discharge in different language than the present Code provision. A 1976 amendment to the Higher Education Act of 1965[4] made loans guaranteed or insured under that Act nondischargeable for a period of five years "beginning on the date of commencement of the repayment period." 20 U.S.C. § 1087–3(a) (1976) (Repealed 1978). The Legislative History states that the successor Code section "follows generally current law and excepts from discharge student loans until such loans have been due and owing for five years." S.Rep.No. 95–989, 95th Cong., 2d Sess. 79 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5865. This suggests a legislative intent that the loan first becomes due on the date that the first installment is due. This interpretation is compatible with Code language excluding "any applicable suspension of the repayment period" from the five-year period. The institution is given authority to set standards for half-time academic workload and to determine when the repayment period begins. 45 C.F.R. § 144.2(r) (1976), § 144.2(t)(u) (1977) [current version at 34 C.F.R. § 674.2 (1981)]. The Debtor received a copy of the Summary (Respondent's Exhibit No. 3) which established the repayment schedule. He made no objection to the delayed start of loan repayments until this proceeding was commenced. Or-

---

**2.** The National Defense Education Act of 1958, 20 U.S.C. §§ 401–602 (1976) created this program. However, the Debtor's loan was a National Direct Student Loan. Because of the transfer of the functions to the Education Act of 1965 by the Education Amendments of 1972, the loans were re-labelled. Before July 1, 1972, the loans were called Defense Loans, and after this date they were called Direct Loans. *See* 20 U.S.C. §§ 1087aa–1087ff (1976 & Supp. II 1978). The abbreviation "NDSL" is used interchangeably. Note, *Skipping Out on Alma Ma-*

*ter: Some Problems Involving the Collection of Federal Student Loans*, 15 Colum.J. of Law and Social Problems 315, 317 (1980).

**3.** The Court took under advisement its ruling on the admissibility of Respondent's Exhibit No. 3. The document appearing to be qualified for admission, the Debtor's objection is overruled.

**4.** 20 U.S.C. § 1101, *et seq.*

dinarily, such a delay would work to the advantage of the student. Here, the delay brings the first installment within the five-year period. Even with the "due diligence" requirement of the regulations,[5] the delay of Penn State in establishing the repayment period was reasonable. Some of this delay is required because of the notices which must be sent before repayment can begin. *See* 45 C.F.R. § 144.42(c) (1977) [current version at 34 C.F.R. § 674.43 (1981)]. The failure of the Debtor to attend the exit interview required by the Regulations [6] may have impeded Penn State in establishing an earlier repayment schedule. Nevertheless, the first installment of the debt became due June 1, 1977, and even though repayment may have been required to commence at an earlier date, the Debtor contributed to the delay by failing to report for his exit interview in July of 1975, made no objection to the scheduled first installment date, and that event, the first installment date, by the expressed legislative intent, marks the occasion when the debt "first became due."

Since the Debtor's student loan first became due within five years prior to the filing of his bankruptcy petition, it was not discharged in his bankruptcy proceeding. Consequently, Penn State and Financial Collection Agencies, Inc., cannot be held in contempt for attempting to collect this debt.

---

5. The institution is required to coordinate information among its offices so that it is able to know when a student has graduated or left school. *See* 45 C.F.R. § 144.41 (1977) [current version at 34 C.F.R. § 674.43 (1981)].

6. 45 C.F.R. § 144.42(b) (1977) [current version at 34 C.F.R. § 674.43 (1981)].