In the Matter of Frank WHITEHEAD, III, Debtor.

Frank WHITEHEAD, Plaintiff,

v.

STATE OF OHIO, UNIVERSITY OF CINCINNATI, Defendant.

Bankruptcy No. 1–82–01640.
Adv. No. 1–83–0088.

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 29, 1983.

Sylvan P. Reisenfeld, Cincinnati, Ohio, for defendant.

J. Roger Crombie, Cincinnati, Ohio, for plaintiff.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

RANDALL J. NEWSOME, Bankruptcy Judge.

This matter is before the Court pursuant to a complaint filed by Frank Whitehead to determine the dischargeability of a student loan under 11 U.S.C. § 523(a)(8).

Pursuant to a trial on the merits held May 12, 1983, the Court hereby submits its Findings of Fact, Opinion and Conclusions of Law:

### Findings of Fact

1. Plaintiff-Debtor, Frank Whitehead, attended the University of Cincinnati during 1975 and 1976. Whitehead admitted to attending "a month or two" in 1976; both parties agree he withdrew from the school no later than June of 1976.

2. Plaintiff signed two promissory notes at the University of Cincinnati; one was signed January 8, 1975 for $1000.00 and a second on January 9, 1976 for an additional $1000.00. These notes are captioned respectively, "National Direct Student Loan Note" and "National Direct Student Loan Program" and state that funds advanced pursuant to the notes are drawn from a fund created under Title IV, Part E. of the Higher Education Act of 1965. Paragraph II of both notes states as follows:

II. Repayment of principal, together with interest thereon, shall be made over a period commencing (except when Paragraph III (3) is applicable) 9 months after the date on which the Maker ceases to carry, at an institution of higher education, . . . at least one-half the normal full-time academic workload and ending 10 years and 9 months after such date. . . .

Paragraph III(7) of plaintiff's notes required him to notify the institution of any change of address.

3. In 1976, plaintiff left school to seek employment. By his own admission, he did not notify the university of his withdrawal or of any subsequent changes of address.

4. Defendant's memorandum of law states that the university did not discover plaintiff's absence until March 1, 1979, although testimony given at trial by the university's student loan specialist established that a two-year "extraordinary circumstances" deferment was granted to Whitehead on June 1, 1978, retroactive to June 1, 1976. In addition, a 9 month grace period was granted to plaintiff.

5. According to the University, plaintiff's first payment, after the expiration of the deferment and grace period, was due March 1, 1979.

6. Plaintiff made a small payment ($5.00) toward his student loans in September, 1979, and made five more small payments at irregular intervals up to June, 1982 for a total of $50.00.

7. On June 11, 1982, plaintiff filed a petition for bankruptcy, and was granted a discharge on December 12, 1982.

8. Plaintiff has been unemployed since August, 1982 from LeBlond Machine Tool Company where he had worked as a painter for six years at an annual salary averaging approximately $15,000.00.

9. Plaintiff is separated from his wife and is the father of one child, for whom he makes support payments.

10. On February 9, 1983, plaintiff filed a complaint to determine the dischargeability of his student loans and a trial was held on that complaint.

### Opinion

The plaintiff seeks to be discharged from his obligation to repay his student loans under the dischargeability provisions of 11 U.S.C. § 523(a)(8). These provisions state:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an education loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

Under the facts, plaintiff left the University no later than June of 1976. His nine month grace period would have ended no later than March of 1977, when under the terms of his note, repayment would have "first become due." Plaintiff argues that March of 1977 is more than five years before the plaintiff filed his petition in bankruptcy, and therefore, the debt should be dischargeable under the provisions of 11 U.S.C. § 523(a)(8)(A).

Defendant U.C., however, argues that the five-year period was tolled by virtue of deferments allowed by 34 C.F.R. § 674.34 (1981), and that this federal regulation governs the interpretation of the notes. Assuming, *arguendo,* that the repayment provision in plaintiff's notes was to be interpreted in light of federal regulations and provisions of the Higher Education Act [1], we find that U.C. cannot prevail in this proceeding. Contrary to the defendant's assertion, neither the Higher Education Act nor the regulations grant U.C. the power to *unilaterally* extend repayment deferments for hardship or extraordinary circumstances.

Lillie Danielsen, a U.C. student loan specialist, testified that the U.C. registrar does not notify her when students cease taking courses. She stated that U.C.'s delay in pressing for repayment was a result of plaintiff's failure to notify it of his withdrawal and subsequent change of address. It is undisputed that plaintiff failed to notify the university of his later changes of address.

Miss Danielsen testified that there is no requirement on the face of the note requiring the borrower to notify the university upon withdrawal, but that such requirement is found in the regulations. After studying the regulations from 1975 through 1981, we are unable to locate any such provision.

U.C. further argues that because of the failure of plaintiff to notify it of his change of address, two years elapsed before it realized he had left school. This two year delay obviously was longer than the nine month grace period allowed by the terms of the note, and thus necessitated, according to U.C., the granting of an "extraordinary circumstances" or "E" deferment. Miss Danielsen testified that both hardship and "E" deferments are given "at the discretion of the institution," and that "E" deferments are given "when a student leaves school without graduating or notifying us that he's leaving." She testified that an "E" deferment is the same as an "extraordinary circumstances" deferment under 34 C.F.R. 674.34(d)(1). There was additional testimony that the "E" deferment was granted as a result of action taken by the university and that the plaintiff-debtor neither requested the deferment nor was informed it had been granted.

This unilateral action on the part of the University raises the thorniest issue in this case. Neither contract law principles nor the federal regulations give the institution the right to unilateral modification of the contract, despite the university's assertion

---

1. Paragraph I of both notes states that "Such terms of the note as are subject to interpretation shall be construed in the light of" the Higher Education Act of 1965 and the federal regulations implementing that statute. Since the repayment clauses appear to be unambiguous, we question the need for reference to the statute and regulations in resolving the question of when the notes first became due and payable. As was noted in *In re Brown,* 4 B.R. 745, 746 (Bkrtcy.E.D.Va.1980), the date a note becomes due and payable is a factual question to be determined from the promissory note signed pursuant to the student loan agreement.

that granting these extensions is standard practice.

■ To support the contention that the payment of a note has been extended, there must exist the same elements essential to the execution of a contract, i.e., adequate consideration and mutual consent. *Nyhus v. Travel Management Corp.,* 466 F.2d 440, 445 (D.C.Cir.1972); *Tsesmelis v. Sinton State Bank,* 53 S.W.2d 461, 462 (Tex.Com. App.1932). The agreement for extension must be for a definite time and must mutually bind the parties, payor and payee, the one to forbear suit during the time of extension and the other the right to pay the debt before the end of that time. *Tsesmelis,* 53 S.W.2d at 462.

■ In the case at hand, the extension given for repayment of the loans was completely unilateral. Not only did plaintiff not request an extension he was never informed he had been granted one. Defendant argues that the additional 24 months granted to Whitehead operated to his benefit. This may or may not have been true, but the advantages and disadvantages were for Whitehead to determine. At this point, allowing a unilateral extension would be to his detriment, since it would not allow dischargeability.

Further, there was no consideration for the granting of the extension. While generally forbearance to sue on a note by a creditor would be adequate consideration for a modification, it is also generally held that "mere forbearance from exercising a legal right, *without any request to forbear* or circumstances from which an agreement to forbear may be implied, is *not* a consideration which will support a promise." (See, 1 Williston on Contracts, 3d Ed. § 135) (em-

phasis supplied). Forbearance was, in the past, provided for under the federal regulations, but, again, the language states that "forbearance for the benefit of the Student Borrower may be *agreed upon by the parties . . .*" (45 C.F.R. § 177.51 (1976, 1977, 1978)). (Emphasis supplied).

In *Crumley v. Hope College,* 21 B.R. 170 (Bkrtcy.E.D.Tenn.1982), the plaintiff sought to have her student loan debts discharged under 11 U.S.C. § 523(a)(8), arguing that the requisite five years had elapsed between the date the loan first became due and the date she had filed her bankruptcy petition. The dispute centered on whether the lending institution could unilaterally suspend repayment for 19 months, thus making the debt nondischargeable, or only for the 11 month period specifically requested by the debtor. The Court found that while the defendant lending institution has the right under the terms of the note to determine the period of the installment payments (i.e., quarterly, monthly, or bimonthly), "this is clearly not tantamount to a right to unilaterally defer or suspend the repayment for a period of time," and that therefore the debt fell outside the five-year period and was dischargeable. *Id.* at 172.

■ Defendant University, however, argues that it is allowed to modify the contract and grant such an extension by virtue of federal regulations citing 34 C.F.R. § 674.34(d)(1) as the basis for its unilateral extension of repayment time. Putting aside the problems raised by holding plaintiff to a set of regulations not in effect when he signed his notes,[2] we find upon reading the regulations in question that the extraordinary circumstances deferment relied upon by defendant must be requested

---

2. The wording of the promissory notes signed by Whitehead appears consistent with federal regulations in effect in 1975 and 1976. The regulations at that time (found in 45 C.F.R. § 177.1 et seq.) do not set forth a sample promissory note, but do enumerate several points that must be set forth in a note. (See, 45 C.F.R. § 177.46, Disbursement and repayment of loans) It was not until 1981, when the relevant sections were redesignated as 34 C.F.R. 674.1 et seq., that a sample note was appended to the regulations. In Paragraph I of that 1981 note, it is stated, that "The terms of this note *must* be interpreted in accordance with the Act and Federal Regulations issued under the Act." (Emphasis supplied). As of 1981, then, it was clearly federal policy that the entire note be read in light of the regulations; in 1975 and 1976, when plaintiff signed his notes, such intent was not so clear from the face of the notes.

by the borrower. (34 C.F.R. § 674.34(d)(1) (1981)).

These regulations clearly do *not* give the lending institution the unilateral right to grant extensions and deferments. The student borrower must request the extension or deferment and then the institution may or may not grant the request.

Defendant asks us to consider *In re Brinzer*, 21 B.R. 545 (Bkrtcy.S.D.W.Va.1982) for the proposition that when the actions of a student contribute to the University's delay in collecting a debt, the debt does not become "due" under the provisions of the Bankruptcy Code until the university begins its collection procedures.

The fact that the plaintiff did not notify the school of his change of address and withdrawal from school are separate issues from whether the school acted diligently in collecting the loan.

In *U.S. v. Tilleraas*, 538 F.Supp. 1 (N.D. Ohio 1981), *aff'd*, 709 F.2d 1088 (6th Cir. 1983), defendant-debtor signed three promissory notes in order to obtain federally-insured student loans. She later married and moved to another state. The government became a holder of her note in July of 1974, but was unable to obtain a current address until May 10, 1979. Plaintiff argued it was entitled to toll the statute of limitations for the five years "during which the defendant's exact whereabouts were unknown" because "the defendant effectively prevented the plaintiff from pursuing the matter ..." *Id.* at 3. The Court held that: "the essence of the government's right of action, as framed in the complaint, is the contractual obligation expressed by the terms of the note and the defendant's alleged breach of that obligation to repay... The government could have commenced its action at that time by suing the defendant at her last known address. Under Fed.R.Civ.P. 4, an action is commenced by the filing of a complaint, even if service cannot be completed until a later day." *Id.* at 3, 4.

Ohio's Rules of Civil Procedure likewise allow service after the filing of a complaint (Ohio R.Civ.P. 3) and also provide for service by publication (Ohio R.Civ.P. 4.4) when the defendant's residence is unknown and cannot with reasonable diligence be ascertained.

We do not condone defendant's failure to notify the university of his change of status and address, yet his failure did not leave the university powerless to act. As soon as it was known that the plaintiff was no longer attending school (which, if the university had coordinated information among its offices, would have been at the end of the Spring Quarter in 1976, when plaintiff's grade reports would have reflected incomplete work), the defendant could have instituted its standard repayment plan. Had its efforts at securing repayment failed, the university could have then instituted collection proceedings, filed suit, or turned the debt over to the Secretary of Education for collection. 34 C.F.R. § 674.46 (1981); 45 C.F.R. 177.48 (1976).

We are mindful of the burden this places on the university, but recognize that it is not only student borrowers who must act responsibly with taxpayer's money. Acting as a disbursement agency for federally insured loans carries with it the duty of acting promptly and diligently in the collection of those loans.

For the above-stated reasons, we hold that plaintiff's student loans are a dischargeable debt under 11 U.S.C. § 523(a)(8)(A) and that judgment is rendered in favor of plaintiff.

Because we find for plaintiff under § 523(a)(8)(A), we do not reach his argument that nondischargeability of the loans would impose "undue hardship" under § 523(a)(8)(B). We would note in passing, however, that the facts and circumstances of this case are not such as to meet the burden of undue hardship as set forth by this Court in *In re Richardson*, Case 32 B.R. 5 (Bankr.S.D.Ohio, 1983) (Newsome, J.).

*Conclusions of Law*

1. This Court has jurisdiction over this action under 28 U.S.C. § 1471(a) and the General Order of the United States District Court for the Southern District of Ohio, entered December 23, 1982.

2. Plaintiff has established that his student loans first became due more than 5 years before the date of the filing of his bankruptcy petition. (11 U.S.C. § 523(a)(8)(A)).

3. It is therefore ORDERED that the debt of the plaintiff-debtor Frank Whitehead, to the defendant, University of Cincinnati, State of Ohio, is dischargeable and that judgment be entered in favor of the plaintiff, Frank Whitehead.

IT IS SO ORDERED.