In re Frank T. COSTANTINO, Debtor.

**INTERSTATE SECURITIES CORPORATION, Plaintiff,**

v.

**Frank T. COSTANTINO, Defendant.**

**Bankruptcy No. 85–00193.
Complaint No. 85–0181.**

United States Bankruptcy Court,
D. South Carolina.

Aug. 29, 1986.

R. Geoffrey Levy, Levy and Goodwin, Columbia, S.C., for plaintiff.

Vickie R. Steele and Gerald M. Finkel, Finkel, Georgaklis, Goldberg, Sheftman & Korn, P.A., Columbia, S.C., for defendant.

J. BRATTON DAVIS, Bankruptcy Judge.

The plaintiff, Interstate Securities Corporation (Interstate), brought this adversary proceeding against Frank T. Costantino (debtor) seeking a determination that its claim (the debt) against the debtor in the sum of $25,411.04 is nondischargeable pursuant to 11 U.S.C. § 523 of the Bankruptcy Code (11 U.S.C. § 101[1] *et seq.*)

Interstate alleges (1) that the debt is nondischargeable pursuant to § 523(a)(2)(A) because the debtor secured credit from Interstate by false pretenses or, alternatively, actual fraud, and (2) the debt to Interstate is nondischargeable pursuant to § 523(a)(2)(C) because it is a consumer debt for more than $500. for luxury goods and services incurred by the debtor within 40 days of the filing of his petition in bankruptcy.

The debtor denies the allegations of false pretenses and actual fraud and denies that the debt to Interstate was a consumer debt for luxury goods and services.

### FACTS

The debtor is employed as the business manager of Aiken Community Hospital and has been engaged in stock and index options trading for several years.

The debtor signed an options agreement with Interstate on December 11, 1984, whereby Interstate agreed to handle the purchase and sale of index options for the debtor.

Beginning December 19, 1984, and concluding January 18, 1985, the debtor entered into seven transactions with Interstate whereby Interstate purchased index options for the debtor.

On the day after each of the first six transactions, known as "settlement day", the debtor paid Interstate, as required, for the index options purchased on his behalf.

The seventh transaction, entered into on January 18, 1985, resulted in a loss to the debtor of $28,000.

The debtor did not have sufficient funds in his Interstate account to cover the full amount of the loss.

The debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 30, 1985.

Interstate filed a claim against the debtor, resulting from the seventh transaction, in the amount of $25,411.04.

### ISSUES

1. Whether the debt is nondischargeable pursuant to § 523(a)(2)(A).

2. Whether the debt is nondischargeable pursuant to § 523(a)(2)(C).

### DISCUSSION

#### I

*Dischargeability—General Considerations*

Exceptions to discharge are to be narrowly construed in favor of the debtor. *Matter of Schnitz*, 52 B.R. 951 (Bankr.W.D.Mo.1985); *In re Branch*, 54 B.R. 211 (Bankr.D.Colo.1985); *In re Bridges*, 51 B.R. 85 (Bankr.W.D.Ky.1985); *Sylvester v. Stone (In re Stone)*, 11 B.R. 209 (Bankr.D.S.C.1981). "Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." 3 *Collier on Bankruptcy* ¶ 523.-05A at 523–15 (15th ed. 1985). A broad construction of the exceptions would undermine the policy of granting the debtor a fresh start. *See, In re Marks*, 40 B.R. 614 (Bankr.D.S.C.1984); *In re Lones*, 50 B.R. 801 (Bankr.W.D.Ky.1985); *In re Schultz*, 46 B.R. 880 (Bankr.D.Nev.1985); *In re Levitan*, 46 B.R. 380 (Bankr.E.D.N.Y.1985); *In re Nicoll*, 42 B.R. 87 (Bankr.N.D.Ill.1984); and *In re Brown*, 43 B.R. 613 (M.D.Tenn.1984).

---

**1.** Further references to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) are by section numbers only.

"Exceptions to discharge are a matter of federal bankruptcy law; state law may be consulted only to the extent that it is not in conflict with the Congressional policy of providing a fresh start to the honest debtor." *In re Schultz*, 46 B.R. 880, 891 (Bankr.D.Nev.1985).

The plaintiff here, in challenging the dischargeability of the defendant's debt, bears the burden of proof. *Stone*, 11 B.R. at 211; *In re Green*, 5 B.R. 247, 2 C.B.C.2d 905 (Bankr.N.D.Ga.1980); *In re Wray*, 1 C.B. C.2d 59 (Bankr.M.D.Tenn.1979).

The proof must be clear, cogent and convincing evidence. Fraud is never presumed. It has always been fundamental that the conduct of mankind is presumed to be upright and those who allege to the contrary have the burden of strict proof as to every allegation.

*Stone*, at 211.

## II

*Dischargeability under § 523(a)(2)(A)*

■ Section 523(a)(2)(A) provides:

A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\*    \*    \*    \*    \*    \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Paragraph 523.08[4] of 3 *Collier on Bankruptcy* (15th ed. 1985) states that: "The frauds included in the portion of § 523(a)(2)(A) under discussion are those which in fact involve moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient." *See*, *Stone*, at 211.

Interstate contends that the debtor made a materially false representation when he requested Interstate to buy index options for him in the seventh, and last, transaction and represented that he had the ability and the intent to pay for that transaction on the settlement date.

Interstate has not shown that the debtor entered into the last transaction with the knowledge that he did not intend to or was unable to pay for the options on settlement day. What was shown was that in the previous six transactions, which occurred during the previous 30 days, the debtor had paid for all six transactions in a timely fashion. It was only after suffering simultaneous losses with other brokerage firms, that he found himself unable to pay for the last transaction with Interstate.

Interstate has failed to prove that debtor entered into the last transaction without intending to pay for the index options. The court finds no clear and convincing evidence of bad faith or intentional wrong on the part of the debtor. Therefore, the relief sought under § 523(a)(2)(A) should be denied.

## III

*Dischargeability under § 523(a)(2)(C)*

### A

Interstate alleges, in its second cause of action, that the debt to Interstate is a consumer debt for luxury goods and services incurred within 40 days of the bankruptcy which, under § 523(a)(2)(C), is presumed to be nondischargeable.

Section 523(a)(2)(C) provides:

A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\*    \*    \*    \*    \*    \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for 'luxury goods or services' incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extension of consumer credit under an open end credit plan obtained by an individual debtor on or

within twenty days before the order for relief under this title, are *presumed to be nondischargeable;* 'luxury goods or services' do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act (15 U.S.C. 1601 et seq.). (Emphasis added).

Simply stated, subparagraph (C) of § 523(a)(2) creates a presumption of nondischargeability for consumer debts over $500. for "luxury goods or services" incurred by a debtor on or within 40 days before the order for relief and for cash advances in excess of $1,000. incurred within 20 days.

■ By its terms, subparagraph (C) is applicable only to specified debts. The statute envisions a two-step inquiry:

1. It must first be determined if the debt is one to which the presumption of nondischargeability applies;

2. If the presumption does apply, it must then be determined whether the debtor has come forward with sufficient evidence to rebut the presumption.

■ The presumption as to nondischargeability affects the burden of proof; it does not affect the construction of the exceptions themselves. The creditor bears the burden of proof in establishing that the debt falls within the presumption. *See, Matter of Smith,* 54 B.R. 299 (Bankr.S.D. Iowa 1985).

### B

In order for § 523(a)(2)(C) to apply, three requirements must be met. First, the debt must be a consumer debt for "luxury goods or services". "Second, the debt must have been incurred shortly before the bankruptcy petition was filed. Third, the debt must be owed to one creditor, and when aggregated, must exceed a minimum amount. The minimum amount is $500 for consumer debt...." *Matter of Smith, supra,* at 301.

### I

■ The debt must be a consumer debt. *See,* 3 *Collier on Bankruptcy* ¶ 523.10A at 523–71. The Bankruptcy Code defines "consumer debt" as "mean[ing] debt incurred by an individual primarily for a personal, family, or household purpose." § 101(7). This definition should be strictly construed. Interstate argues that the debt is a consumer debt because it was used to purchase consumer goods for use by the debtor and his family. The debtor contends that the debt is not a consumer debt because the funds were used to purchase index options, not consumer goods.

■ The term "consumer debt", as used in the Bankruptcy Code, "is borrowed from the definition of 'consumer goods' set out in the Uniform Commercial Code." *In re Norman,* 13 B.R. 894, 897 (Bankr.W.D.Mo. 1981). *See,* 5 *Collier on Bankruptcy* ¶ 1300.12[5] at 1300–42. South Carolina Code ¶ 36–9–109(1) (1976, as amended) (the South Carolina Uniform Commercial Code) defines "consumer goods" as goods "used or bought for use primarily for personal, family or household purposes." The critical factor is the use of the goods in the production of income, as opposed to normal consumptive activity by an individual.

The debt incurred in the purchase of the index options is not a consumer debt; therefore, § 523(a)(2)(C), which relates only to consumer debts, is of no aid to the plaintiff.

Inasmuch as the debt in question is not a consumer debt, § 523(a)(2)(C) does not afford the basis for the denial of the dischargeability of the debt; therefore, it is not necessary for the court to consider the other requirements of § 523(a)(2)(C).

### ORDER

For the foregoing reasons, this court concludes that the debtor's obligation to Interstate is dischargeable and that this adversary proceeding should be dismissed.

AND IT IS SO ORDERED.