In re Andrea L. RAHLF, Debtor.

Andrea L. RAHLF, Plaintiff,

v.

ILLINOIS STATE SCHOLARSHIP COMMISSION and I Help/Hawkeye Bank & Trust, Defendants.

Bankruptcy No. 88 B 30669.
Adv. No. 88 A 3077.

United States Bankruptcy Court,
N.D. Illinois, W.D.

Dec. 8, 1988.

Mary P. Gorman, Rockford, Ill., for plaintiff.

Richard K. Nowell, Sp. Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD N. DEGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the Debtor's Complaint to Determine the Dischargeability of a Student Loan. The Illinois State Scholarship Commission (ISSC), as Defendant, filed an Answer. The issue to be decided involves the validity of a six month post-deferral deferment for purposes of determining the five year limitation on non-dischargeable student loans.

The Debtor, Andrea L. Rahlf, is represented by Attorney Mary P. Gorman. The Defendant is represented by Attorney Richard K. Nowell.

This Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy procedure.

The facts of this case are not in dispute. The Debtor obtained a student loan from a local bank, guaranteed by the ISSC. Payments on the loan were to come due nine months after the Debtor's last day of school as a full time student.

On February 1, 1983, the nine month period had expired. The Debtor began making payments on the note and continued for over four years. After becoming unemployed, and failing to make the payments due for July and August, 1987, the Debtor submitted a Request for Deferment of Loan to the ISSC for a three month period beginning September 4, 1987, on the basis of her unemployment. The Debtor allegedly received no response to her request, but made a payment in November of 1987. By the end of the three month period, she regained employment. Despite her remaining employed, she did not resume making payments for at least six months thereafter.

On May 4, 1988, the Debtor filed under Chapter 7 of the Bankruptcy Code, five years, three months and three days after she began making payments on the loans.

Student loans are not dischargeable under Section 523(a)(8) of the Bankruptcy Code unless they became due more than five years before the bankruptcy was filed, exclusive of any suspension periods, or an undue hardship would result. 11 U.S.C. Section 523(a)(8). The parties agree that undue hardship is not present here. The dispute arises over the length of the suspension period. If the six month post deferment grace period is included as part of

the suspension period, the loan became due less than five years before the filing. If it is not, the debt is dischargeable as the debt became due more than five years before the Debtor filed her Chapter 7 petition.

By way of background, the Code of Federal Regulations provides for the deferment of payments on student loans for various reasons, including temporary unemployment of the debtor. 34 CFR Section 682.210(b)(7). If the debtor is unable to find full time employment, payments may be deferred for up to 12 months, provided the debtor submits a written Request for Deferment, supported with verification that employment is being sought. To continue the deferment, the debtor must submit a new request with verification statements every three months. The Request for Deferment form, as drafted by the ISSC, sets out the requirements of the Federal Regulations on the back side under Item 9.

■ In addition to the unemployment deferment, the Regulations allow for a post-deferment grace period of six months to commence after each deferment period or combination of deferment periods, for loans made prior to October 1, 1981. 34 CFR Section 682.210(a)(2). Unlike the unemployment deferment, the Regulations provide no method for obtaining this "deferment." It appears that the post-deferment grace period is available only if one of the other deferments is granted. The Debtor obtained her loans prior to October 1, 1981, and thus was eligible for the six month grace period if the unemployment deferment was valid.

The Debtor implies in her brief that the unemployment deferment was not effective because she was not notified of the approval by the original lender. Therefore, the grace period never became effective because the original deferment was not authorized. The Court disagrees. Nothing in the Deferral Request requires the lender to notify the Debtor of approval. The procedure involves only a request by the debtor with proper verification. Indeed, the Debtor made only one payment during this period, anyway. The unemployment deferment was approved, as requested, and therefore effective.

■ The determination of the validity of the post-deferment grace period is a bit more difficult. The language of the Request for Deferment form, as drafted by the ISSC, does not clearly state that the debtor will automatically receive a six month deferment, if her loan was obtained prior to October 1, 1981. Equally vague is its reference to the Federal Regulations in relation to the six month grace period. Not surprisingly, though, the ISSC contends that the Request for Deferment must be read in conjunction with the relevant provisions of the Code of Federal Regulations which more clearly sets out the debtor's right to the additional six month deferral. Many courts, when determining the suspension periods allowed under Section 523(a)(8)(A), look to the Federal Regulations in existence at the time for guidance. *In re Eckles,* 52 B.R. 433 (E.D.Wis.1985), *In re Whitehead,* 31 B.R. 381 (Bankr.S.D. Ohio, 1983), *In re Brinzer,* 45 B.R. 831 (S.D.W.Va.1984), *In re Keenan,* 53 B.R. 913 (Bankr.D.Conn.1985).

The Federal Regulations here were in existence at the time the Debtor submitted her Request, and referred to in the Request. Consequently, it would not be inappropriate, when determining the validity of the suspension, to review the Request for Deferment in light of the Code of Federal Regulations.

A plain reading of 34 CFR sections 682.-210(a)(2) and 682.200(b) shows that the "borrower is entitled to have" her payments deferred during the grace period. The ISSC contends that this grace period is automatically imposed upon the authorization of an unemployment deferment. The Court observes that the Code of Federal Regulations does not set out procedures to follow or requirements to be met in order to obtain this "deferment," thereby implying that none are required and that it automatically arises.

Even if the Court were to find that the Regulations do not provide for an "automatic" grace period, or that it is inappropriate to refer to the Regulations at all, since

the issue of when a note first becomes due and payable is a factual question to be determined by the terms of the contract itself, *In re Whitehead,* supra at 383 n. 1, the Debtor's argument would still fail. The Request form itself provides for an additional six-month suspension of payments.

Section 1 of the Request for Deferment provides in part:

> Unless I have checked the box below, if I am eligible for a post deferment grace period on some but not all my guaranteed loans, I agree to postpone repayment on the non-eligible loans, as described in the Post Deferment Grace Period section on the back of this form.

> . . . . .

> By checking the box below, I do not agree to the terms as set forth in the large box on the back of this form and agree that I will begin repayment of my loan(s) disbursed on or after October 1, 1981, immediately following the end of any period of deferment; *I will begin repayment of my loan(s) disbursed before October 1, 1981 six months later.* [Emphasis added]

On the reverse side of the form, at the bottom of the page is a box marked POST DEFERMENT GRACE PERIOD, which states in part:

> If I am eligible for a six-month post-deferment grace period on some but not all of my GSLP loans; I Agree that, following any deferment period, the lender may postpone for six months my payments on loans made on or after October 1, 1981, which are not eligible for the post-deferment grace period.

The language following this sentence provides the consequences of electing to accept a post deferment grace period on loans made after October 1, 1981.

Construing the language against its drafters, these provisions can be interpreted to mean the Debtor may agree to allow her lender to defer payments on post-October 31, 1981, loans in conjunction with pre-October 31, 1981, loans which are automatically deferred, by checking the designated box. If she did not agree by checking the box, she still was to begin payments on pre-October 31, 1981, loans six months later.

Although the Request for Deferment form is not a model of clarity, it does give rise to a six month suspension period. By submitting it, the Debtor agreed to an automatic six month suspension beginning after the three month unemployment deferment. Any other construction would betray the true meaning of the agreement by the parties as read from the four corners of the document.

This result is warranted for policy reasons as well. The purpose in holding student loans non-dischargeable is to maintain a source of funds for needy students who wish to obtain an education. A balance is struck by allowing for liberal repayment terms, including deferments for debtors who encounter financial difficulties. *See In re Eckles,* supra, where the period in which a reduction in the amount of the installment was held to be a "suspension period" in light of this policy. Only upon a showing of undue hardship or the consistent repayment of the debt for five years, can the debt be discharged. *In re Nunn,* 788 F.2d 617 (9th Cir.1986).

The Debtor here has not consistently made payments for five years, as intended by Congress. Although she may not have been aware of the six month post-deferment grace period, she clearly has not made any payments during that time. In essence, the Debtor is requesting the Court to ignore a valid suspension of her payment, which arose at the same time that her payments were not being made, primarily because she was unaware of the suspension and did not request it. A decision on this basis would betray the spirit of section 523(a)(8)(A) and the purpose for which it was drafted.

For the reasons stated, the Court concludes that the Debtor's indebtedness to the ISSC came due less than five years before the date of her filing the Chapter 7 petition and is, therefore, not dischargeable.

IT IS SO ORDERED.