**Christopher ALLESHOUSE,**
**Defendant–Appellant,**

v.

**State of Indiana, STATE STUDENT ASSISTANCE COMMISSION,**
**Plaintiff–Appellee.**

**No. 57A03–8908–CV–367.**

Court of Appeals of Indiana,
Third District.

Jan. 15, 1991.

Dennis D. Graft, Graft & Owen, Kendall-ville, for defendant-appellant.

Price A. Jackson, Jr., State Student Assistance Com'n, Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

This appeal is from a grant of summary judgment in favor of the lender to recover for a debtor's defaulted guaranteed student loans. The issue is whether the court properly applied the law to determine that the debt had not been discharged in bankruptcy. We conclude the court erred.

Between August 22, 1980 and August 15, 1982 Alleshouse (debtor) borrowed money and executed three promissory notes for guaranteed student loans insured by the

State Student Assistance Commission of Idnaian (lender).[1] According to the terms of the notes, repayment was to commence on the "first day of the tenth calendar month following school termination."

It is agreed that school termination occurred December 10, 1982 and the parties stipulated that the first day of the tenth calendar month following termination was October 10, 1983.[2]

Debtor filed a petition for bankruptcy under Chapter 7 on December 2, 1988 and received a general discharge on March 3, 1989. While the student loans were a scheduled debt, their dischargeability was not expressly litigated in the bankruptcy proceeding.

When the lender commenced this action, the debtor asserted his bankruptcy discharge and the lender responded that the loans were not dischargeable.

Pursuant to 11 U.S.C. § 523(a)(8)(A):

(a) A discharge ... does not discharge an individual from any debt

\* \* \* \* \* \*

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, unless

(A) Such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of filing of the petition;....

Since the debtor's petition in bankruptcy was filed more than five years after the date payments first became due under the notes, the critical question is whether there was a suspension of the repayment period within the meaning of the act.

The lender contends there was. In support of that contention it points to two documents. The first was a Forbearance Agreement for the period October 10, 1983 through January 10, 1984. The form was dated January 10, 1984 and signed by the lender but not the debtor. The second was a repayment schedule calling for payments to commence on February 15, 1984. This schedule was signed by the debtor. We must determine whether those documents singly, or in tandem, created a suspension of the repayment period within the meaning of 11 U.S.C. § 523(a)(8)(A).

■■ We commence by noting that the general rule to be applied requires that exceptions to the general rule of dischargeability of debts in bankruptcy be construed strictly. *In re Medeiros* (Bankr.M.D.Fla. 1988), 86 B.R. 284, 286. The burden is upon the creditor to establish the debt as squarely within the statutory exceptions. *In re Schmidt* (Bankr.N.D.Ind.1986), 70 B.R. 634, 638. Thus, the burden is upon the creditor to establish the validity of any suspension of the five year period contemplated by 11 U.S.C. § 523(a)(8)(A). *In re Keenan* (Bankr.D.Conn.1985), 53 B.R. 913, 916. Construing exceptions in this manner advances the congressional purpose of giving debtors a fresh start. *In re Schmidt, supra; In re Costantino* (Bankr.D.C.S. 1986), 72 B.R. 189, 190–91.

In *In re Whitehead* (Bankr.S.D.Ohio 1983), 31 B.R. 381 the court held that neither contract law principles nor applicable federal regulations gave a university lender the right to unilaterally grant suspensions of repayment that would except student loans from the five year requirement. The court said:

To support the contention that the payment of a note has been extended, there must exist ... adequate consideration and mutual consent. [citations omitted]. The agreement for extension must ... mutually bind the parties, payor and payee, the one to forbear suit during the time of extension and the other the right to pay the debt before the end of that time. [citation omitted].

---

1. For the sake of simplicity we may ignore the distinctions between the actual lender and the guarantor as they are irrelevant to the issues before us.

2. The first nine days of October 1983 are not significant to the legal issue before us, so we may ignore the obvious error in the stipulation.

The court added that the forbearance from exercising a legal right without any request to forbear, or circumstances from which an agreement to forbear might be implied, was not consideration which would support a promise.

*In re Crumley* (Bankr.E.D.Tenn.1982), 21 B.R. 170 reached a similar result where a lender unilaterally granted a deferment beyond that requested and agreed to. The court found the student's loans were dischargeable because only the agreed-to period qualified as a suspension. *See also In re Brinzer* (D.C.S.D.W.Va.1984), 45 B.R. 831 (unilaterally deferred repayment schedule not a suspension).

These cases must be distinguished from those such as *In re Shryock* (Bankr.D.Kan. 1989), 102 B.R. 217 and *In the Matter of Eckles* (D.C.E.D.Wis.1985), 52 B.R. 433, where the debtor did request the suspension.

Finally, we also note *In re Keenan* (Bankr.D.Conn.1985), 53 B.R. 913 where the creditor retroactively granted an unemployment deferment based on a letter from the debtor. The letter did not request deferment nor did it state that the debtor was unemployed during the period for which the deferment was granted. This was again held not to constitute a suspension that would forestall the running of the five year period.

It appears to us that Congress clearly expressed its concern that guaranteed student loans not be grossly abused by the simple device of student debtors claiming bankruptcy when their educational needs have been met. Thus during the first five years those debts are non-dischargeable. On the other hand, at some point the congressional purpose in affording debtors a new start should be acknowledged and, thus, after having made payments for five years (or at least having been subject to such liability) the debtor might seek discharge.

The decisions appear to properly acknowledge both purposes in their application of the suspension exception. Where the debtor seeks and agrees to some form(s) of suspension of payments he will not be permitted to manipulate and massage the five year period thereby reducing his exposure to repayment. Conversely, lenders may not maneuver themselves around the five year limitation by unilateral choice.

■ The forbearance executed only by the bank, apparently after the fact, standing alone does not serve to suspend the repayment period and prevent the expiration of the five years.

■ But what of the repayment schedule drawn by the bank which was signed by Alleshouse? *In re Brinzer, supra,* teaches that the schedule alone is insufficient, but might it not, when taken together with the forbearance, constitute such an acceptance or ratification as to bind the debtor?

We need not decide today whether such a ratification might be possible because the terms of the repayment schedule executed by Alleshouse preclude any such implication in this case.

Near the beginning of the schedule the following appeared in bold face:

> NOTE TO THE BORROWER: This document is the repayment . schedule which is provided for in the promissory note(s) you signed under the Indiana Guaranteed Student Loan Program. You must repay your loan(s) in compliance with the schedule unless the holder of your loans agrees to other repayment terms. This document in no way supplants the original promissory note(s), nor relieves the liability of any co-signer(s) who signed the original note(s).

Near the bottom of the schedule, again in bold, above the debtor's signature appeared the statement, "I have the right at any time to pay in advance the unpaid balance...."

Thus, the schedule signed by Alleshouse lacked the mutuality of forbearance required by *In re Whitehead, supra.* Instead of acknowledging forbearance, it expressly referred to the requirements contained in the original promissory notes. Under such circumstances no reasonable inference is available that the debtor in-

tended acceptance of the forbearance unilaterally drawn and executed by the lender.

■ One additional point bears mention. One of Alleshouse's arguments urged that the court lacked jurisdiction to grant summary judgment. Two months before the lender filed its motion for summary judgment the court had *sua sponte* ordered the case dismissed. The court gave no reason for the dismissal nor does any reason justifying the order appear in the record.[3] Dismissal was therefore error since it was not based upon lack of jurisdiction or otherwise authorized by statute or the rules of procedure. *Slagle v. Valenziano* (1963), 134 Ind.App. 360, 188 N.E.2d 286.

■ Of course the case should have been formally reinstated before the court took action on the summary judgment. On the other hand, no one raised that deficiency or objected to the court's obvious actual reinstatement and the conduct of the hearing on summary judgment. The failure to enter formal reinstatement could therefore be corrected by a *nunc pro tunc* entry, and the lack of any objection constitutes a waiver of the technical defect for purposes of appeal.

The summary judgment is reversed and the case is remanded for further proceedings consistent herewith.

Reversed and remanded.

RATLIFF, C.J., and STATON, J., concur.

---

**3.** If the court was concerned with lack of prosecution which resulted from the bankruptcy proceeding, pursuant to Trial Rule 41(E) the court was required to set the matter for hearing.