In re William Dennis HUBER, Debtor.

William Dennis HUBER, Plaintiff,

v.

**MARINE MIDLAND BANK, N.A.,
and United States Department
of Education, Defendants.**

Bankruptcy No. 93–12782 K.
Adv. No. 93–1306 K.

United States Bankruptcy Court,
W.D. New York.

March 21, 1994.

William Dennis Huber, pro se.

Michael T. Ryan and George L. Cownie, Buffalo, NY, for Marine Midland Bank.

## DECISION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT TO DEFENDANT

MICHAEL J. KAPLAN, Chief Judge.

Before the Court are what it deems to be cross-motions for partial summary judgment on the Debtor's Complaint to Determine the Dischargeability of Certain Student Loans under 11 U.S.C. § 523(a)(8)(A).[1] He asks that the loans be discharged because, he claims, the loans "first became due more than seven years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition." This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I).

■ A single issue is currently before the Court: When a debtor seeks and obtains deferments of student loan payments because

he continued in school, are those deferments not to be treated as "applicable suspensions" if it is later determined that the debtor was not eligible under law for the deferments that he received?

This Debtor, who is apparently admitted to the Bar, has vigorously sought to establish in various courts that he was (and to establish that he still is) entitled to deferment of his student loans.[2] However, he has failed in that effort. It is now *res judicata* that he was not entitled to the four and more years of "in-school" deferments he sought and received between 1986 and 1990. Had he prevailed in those courts, his student loans would be too "new" to be dischargeable in bankruptcy under § 523(a)(8) unless he could establish "undue hardship,"[3] but payments on those loans might not yet have become required; and he might possibly defer them indefinitely, for he continues to go to school.

Now that it has been established that he was never entitled to deferment in the first place, he argues that those of his long series of loans that would have first come due more than seven years ago but for the deferments, are "old" loans; older than seven years and dischargeable as such under the statute.

The Debtor's prolix arguments rest on a single key element; that is his insistence that "applicable suspension" is a term of art meaning "deferment that is authorized by and in full accordance with applicable law." If he is right, then in light of the fact that his deferments have been found not to be authorized by law, his prayer is not without logic,[4] albeit unappealing.

Were it not for the imprecise language used by some other courts, the present Court

1. The U.S. Dept. of Education has been dismissed from this action, since it (and the New York State Higher Education Services Corporation) has agreed to be bound as to the Debtor, to whatever the Court finally rules as to Defendant, Marine Midland Bank.

2. He has pursued at least four civil actions in the District Court of this district to that effect and a number of actions in other courts. He has been assessed more than $100,000 in sanctions for his conduct in the prosecution of those cases. The dischargeability of those assessments is at issue in·a different Adversary Proceeding.

3. He has sworn under oath in open Court before this Bar that he has no assets, no income, and no expenses; but he has debt.

4. There is another tier of fact and reason which has been placed at issue, but in light of today's decision need not be addressed: to wit, whether misrepresentations or misconduct by the Debtor, if any, in seeking the deferments affects the inquiry, even if the Debtor's key argument is correct.

would think there to be no reason or authority supporting such a contrived view of a clear phrase that has a plain meaning, devoid of ambiguity as applied to deferments—"exclusive of any applicable suspension of the repayment period." [5]

"Applicable" means applying to these loans, as opposed to applying to others of the many loans any student might obtain in succession, over many years of schooling. "Suspension of the repayment period" means extending the term, such as by granting a period (by agreement, by court order, by operation of law, etc.) during which the Debtor is not obliged to make payments.

Although resort to the legislative history seems unnecessary in interpreting the phrase, such resort here simply "proves the pudding." On August 14, 1979, Congress enacted H.R. 2807 to close the so-called "student loan dischargeability gap" that had been created when Congress inadvertently repealed the applicable section of the Higher Education Act of 1965 (former 20 U.S.C. § 1087–3) before the new 11 U.S.C. § 523(a)(8) became effective. In Senate Report No. 96–230, To Accompany H.R. 2807, the Senate Judiciary Committee stated (on June 21, 1979): "Section 3(2) of the bill would also amend 11 U.S.C. § 523(a)(8) to exclude *periods of deferment* from the calculation of the first five years [6] of the repayment period." [7] [Emphasis added.] Yet the language of the amendment was that at issue here— "exclusive of any applicable suspension of the repayment period". Hence, a period of deferment—which is what is indisputably at issue here—is precisely what Congress had in mind when it used the phrase, "applicable suspension of the repayment period."

The cases that the Debtor cites are not as supportive of his arguments as he claims them to be; he attempts to make the language used in those decisions sweep more broadly than their holdings. Those cases recognize that deferments that the borrower did not seek might be "applicable" but ought not to be "chargeable" against the debtor. This notion, that not every deferment ought to be charged against the Debtor under § 528(a)(8), has been expressed in terms such as "authorized deferment," and "valid deferment." The Debtor at Bar argues that these cases mean that every statutory or regulatory infirmity tainting a deferment requires that the deferment not be chargeable against the debtor. That is not what those cases hold.

Thus, in the case of *In re Crumley*, 21 B.R. 170 (Bankr.E.D.Tenn.1982) it was held that a student loan lender may not buy more time for itself to pursue the Debtor by granting a longer suspension of payments than the Debtor requested.[8] The fact that that court stated that the lender "simply had no authority to defer repayment in excess of that requested by the plaintiff-debtor," *Crumley* at 172, does not mean that all deferments that are not "authorized" under law require a result favorable to the Debtor.

Similarly, the Debtor's reliance on *In re Brinzer*, 45 B.R. 831 (S.D.W.Va.1984) is misplaced. The deferments at issue there were found not to be within the scope of the phrase "applicable suspension" because the Debtor had not requested any deferment and because the lender had possessed no "contractual right to unilaterally suspend the repayment for a period of time." *Id.* at 833. That Court's discussion of the "grounds contained in the note for suspension or deferment of the repayment" pertained to whether there was a basis upon which the Debtor could request deferment, had the Debtor elected to do so. That discussion does not support the contention that a deferment granted at the debtor's request is not an

5. It is recognized that the phrase does pose interpretive problems in the context of certain "forbearance" agreements (see *Matter of Eckles*, 52 B.R. 433 (E.D.Wis.1985) and *In re Gremler*, 127 B.R. 202 (Bankr.E.D.Wis.1991)) and "post-deferment grace periods" (see *In re Rahlf*, 95 B.R. 572 (Bankr.N.D.Ill.1988)). Those problems were resolved in a manner that does not assist the Debtor here.

6. This was later amended to seven years.

7. Senate Report No. 96–230, to Accompany H.R. 2807, 96th Congress 1st Session, June 21, 1979, Appendix 3, Collier on Bankruptcy 15th Ed., Tab XI.

8. The case of *Matter of Whitehead*, 31 B.R. 381 (Bankr.S.D.Ohio 1983) is to identical effect.

"applicable suspension" if no appropriate grounds for deferment existed.

The only case cited by the Debtor that seems to stand for what he says it does is *In re Keenan*, 53 B.R. 913 (Bankr.Conn.1985). Two periods of deferment were involved there. As to one period the Court's holding was identical to that in *Crumley*, and was based on *Crumley* and *Whitehead*. The Debtor had not requested a deferment and therefore, said the Court, "the deferment was not valid." The Court then added, "An improper deferment does not suspend the time between the date an educational loan first comes due and the filing of a petition in bankruptcy," and it cited *Crumley* and *Whitehead* for that proposition. *Id.* at 917. (Neither of those cases swept so broadly.) Then, as to the other period of deferment the Court did not offer the facts, but merely found that the deferment was improper or invalid because it was an "unemployment deferment" and such deferments were not available under the applicable regulations during that period. *Id.* Assuming that the Debtor in that case had requested that particular deferment (which the Court referred to as "the first" deferment), that case is squarely in accord with the present Debtor's theory. But the *Keenan* court offered no explanation of its holding and if the debtor had requested the deferment, then I respectfully disagree with the holding. The present Court believes that although the validity of a deferment under law may well affect the lender's ability to recover from state or federal insurers, that fact should not result in a "free ride" for a debtor who requested the deferment and obtained it.

The Debtor attempts to distinguish the case of *In re Kaufman*, 9 B.R. 755 (Bankr. E.D.Pa.1981) wherein student loans were declared non-dischargeable. He seeks to do so on the grounds that the debtor in that case had discontinued his studies without informing the lender, while the Debtor here claims that he has never discontinued his studies. But the Debtor here has misread the *Kaufman* case. Mr. Kaufman sought a deferment while attending graduate school, and on the deferment request he had estimated that he would conclude his graduate studies in May of 1977; hence the lender granted a deferment to that date. In fact, he attended graduate school only for five months, from January, 1975 to May of 1975. He never told the bank he had dropped out of graduate school. As in the *Crumley, Whitehead,* and *Keenan* cases above, the Debtor had gotten exactly what he requested, a deferment for a particular period. If Mr. Kaufman no longer wished deferment after he dropped out of graduate school in May of 1975, it was held, he should have so advised the bank or resumed making payments. Instead he simply enjoyed the benefit of the excess deferment to which he was not entitled. He could not then claim that the "applicable suspension" for § 523(a)(8) purposes was only five months, rather than two years and five months. Like Mr. Kaufman, the Debtor presently at the Bar got precisely the deferments he requested. He cannot now claim that he may benefit twice—once from the deferment and a second time by discharge of the debts for "age."

Three other cases that the Debtor *has not cited,* contain dictum that should be addressed.

In *In re Georgina*, 124 B.R. 562 (Bankr. W.D.Mo.1991), the debtor sought and received nine forbearance periods, totalling 53 months during the 89 months between the time his loans first became due and the date he filed his petition under the Bankruptcy Code. The Court ruled that these periods of forbearance were "applicable suspensions" and declared the loans not-dischargeable. It cited *In re Shryock*, 102 B.R. 217 (Bankr. Kan.1989) and *In re Eckles*, 52 B.R. 433, in support of its holdings. In distinguishing *In re Keenan, supra,* the Court stated:

> The Court in *Keenan* found the student loan indebtedness dischargeable despite two unemployment deferment periods granted by the lender. However ... [t]he court in *Keenan* based its decision on two factors. *First, the deferment periods were improper and in violation of controlling federal regulations.* Second, the deferments were not requested by the debtor, but rather were unilateral decisions of the lender.
> [Emphasis added.]
>
> *Georgina* at 564.

As explained above, the present Court declines to follow that portion of *Keenan,* and consequently disagrees with *Georgina* to the extent, if any, that *Georgina* might be read as approving of that holding of the *Keenan* court.

Next is the case of *In re Barciz,* 123 B.R. 771 (Bankr.N.D.Ohio 1990). That case involved forbearance agreements that slightly reduced the debtor's student loan payments (from $183.77/mo. to $150.00/mo.) for one year and the Court, citing *Eckles, In re Griffin,* 108 B.R. 717 (Bankr.W.D.Mo.1989), and *Shryock,* among others, held that that constituted an "applicable suspension" of one year. It then cited the case of *In re Sava,* 1988 WL 140995 (Bankr.Md.1988) for the proposition that "any suspension of the repayment period *must be a valid suspension.*" *Barciz* at 774. [Emphasis added.] And the *Barciz* Court on that basis then went on to state, in dictum, "Thus, if a debtor was able to show bad faith on the part of a lender, or guarantor, it appears that the suspension would be invalid, and no tolling would occur." *Id.*

The *Sava* case, like the case at Bar, involved a deferment requested by the debtor. Although that Court equated "applicable suspension" with "valid suspension" as does the Debtor here, that Court explained that "Those courts that have found certain suspensions invalid nonetheless concur that valid suspensions reduce the five-year [now seven-year] period of § 523(a)(8)(A)." *Sava* at 140995, 2. It then cited *Keenan, Whitehead* and *Crumley* for that proposition, expressly nothing that in each case, the invalidity resulted from the fact that the debtor had not requested the deferment. Thus, *Sava* and *Barciz* do not stand for the proposition that any and all defects in the deferment constitute an "invalidity" that defeats the tolling, but rather that deferments not requested by the debtor are infected with an invalidity that does defeat the tolling.

The Debtor has not cited to the Court a single case other than *Keenan* [9] in which a debtor who obtained the deferments he or she requested succeeded later in convincing any court that such deferments were not "applicable suspension[s] of the repayment period" because he or she was not entitled to the deferments in the first place. This Court will not so rule.

■ It is also true, on the other hand, that the lender has not cited a single case in which the Debtor sought and received a deferment or forbearance that was not authorized in law, but in which the Debtor was denied the benefit of a ruling under § 523(a)(8) that there had been no "applicable suspension." This Court believes, however, that the statute is clear and the legislative history is clear. To engraft upon the statutory phrase "exclusive of any applicable suspension of the repayment period" the requirement that any such suspension not later be found to be unauthorized by regulation, is without basis in law. That it also would be poor policy is clearly evident: it would either chill lenders' willingness to grant deferments and thereby result in a higher rate of hardship and of defaults, or would increase administrative costs to the student loan program by requiring independent investigation of borrowers' deferment requests.[10] Finally, the Debtor's argument lacks equity: a period of deferment is (by definition) a period during which the lender may not seek collection, and it would therefore be an odd and inequitable result if a party who forbears collection activity at the borrower's request were to be held time-barred from collection as a consequence. Waiver or estoppel might well apply, even if the statutory clause excepting an "applicable suspension" did not exist.

In sum, the Court rejects the view that "applicable suspension," as applied to "in-

---

9. Again, the *Keenan* court did not relate the facts as to the deferment found to have violated regulations; it is not certain that the debtor had requested that unemployment deferment, but it appears that that request was made.

10. Although I have not submersed myself in the reams of exhibits offered as to the deferments themselves, it seems that the Debtor here was ineligible because although one institution certified his eligibility, his less-than-full-time enrollment in more than one institution did not qualify him for deferment as a full-time student even if his part-time enrollments combined constituted a full-time student load. Apparently the lender was not aware of the facts.

school deferments," means only those defer-ments that meet all governing regulations. It is sufficient that the Debtor requested them and received them, and that there is no allegation here of "bad faith" by the lender in granting the deferments.[11]

The Court has considered the Debtor's other claims and arguments, including his argument that constitutional questions and questions of collateral estoppel are at issue before the Court, and I find them to be without merit. His motion for summary judgment is denied.

But this does not end the proceeding. The Debtor should be given the opportunity to ask leave, if he wishes, to seek a determi-nation that repayment of the loans would constitute an undue hardship. 11 U.S.C. § 523(a)(8)(B). His attention is called to this Court's decision in *In re Kraft*, 161 B.R. 82 (Bankr.W.D.N.Y.1993) in this regard, and he will have until March 31, 1994 to make any motion in that regard. If no such motion is made, judgment shall be entered by the Clerk on or after April 1, 1994, declaring his student loans to be NOT DISCHARGED. If he elects not to seek a determination of hardship in this proceeding, he might be required to wait six years (11 U.S.C. § 727(a)(8)) before he could again seek such determination in a Chapter 7 case. See, in the *Kraft* decision, footnote 1 and the text accompanying footnote 6. Remaining open is the question of whether he could discharge these loans sooner in a Chapter 13 case, and the question of whether there have been any other "applicable suspensions of the repay-ment period" since the deferments ended in 1990 (such as any periods during which the lender might have been stayed from collec-tion activities by court order or otherwise).

SO ORDERED.

---

11. It is suggested in some cases that a deferment is not "requested" by the Debtor if it is to accom-modate a lender (such as to keep the debt off the "bad loans" list for banking regulation pur-poses). Perhaps that is what the *Barciz* Court saw as "bad faith" of the lender—convincing the debtor to request deferments or forbearances he or she doesn't need, and then using that against the debtor under § 523(a)(8). It is clear here that these deferments were requested by the Debtor to accommodate the Debtor.