In re Tracy M. GIBSON, Debtor.

**COMMONWEALTH OF VIRGINIA, STATE EDUCATION ASSISTANCE AUTHORITY, Defendant/Appellant,**

v.

**Tracy Marie GIBSON, Plaintiff/Appellee.**

**Civ. A. No. 2:95cv268.**

United States District Court, E.D. Virginia, Norfolk Division.

Aug. 4, 1995.

Daniel G. Bloor, Asst. Atty. Gen., Richmond, VA, for defendant/appellant.

Tom C. Smith, Virginia Beach, VA, for plaintiff/appellee.

## OPINION

REBECCA BEACH SMITH, District Judge.

This matter is before the Court on appeal from the Memorandum Opinion and Order of the United States Bankruptcy Court for the Eastern District of Virginia, entered February 9, 1995.

### I. Factual and Procedural Background

Appellee Tracy Marie Gibson ["Debtor"] filed a Chapter 13 bankruptcy petition on July 22, 1994. On October 19, 1994, Ms. Gibson filed a complaint against the Commonwealth of Virginia, State Education Assistance Authority [the "Commonwealth"], to determine the dischargeability of her student loans. The trial was held on February 7, 1995.

At trial, the sole issue was whether Debtor's loans were dischargeable pursuant to 11 U.S.C. § 523(a)(8)(A), which requires that student loans be due for seven years, exclusive of any "applicable suspension of the repayment period," before they may be discharged in bankruptcy. Debtor previously had filed a Chapter 7 bankruptcy petition on August 17, 1988, and received a discharge in that case on November 30, 1988. During the time that the Chapter 7 petition was pending, Debtor did not make any payments to the Commonwealth for the student loan.

The Commonwealth argued that the time during which the automatic stay was in effect in the Chapter 7 case was an applicable suspension period for purposes of section 523(a)(8)(A), and therefore Debtor's student loans had not been due for the requisite seven years. The bankruptcy court found that the automatic stay was not an applicable suspension period, and because Debtor's loans had been due seven years prior to the Chapter 13 filing, the loans were dischargeable.

### II. Standard of Review

■ The district court reviews the bankruptcy court's conclusions of law *de novo*. *In re Bryson Properties, XVIII*, 961 F.2d 496, 499 (4th Cir.1992).

### III. Analysis

■ A student loan is not dischargeable in bankruptcy unless the loan "became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition." 11 U.S.C. § 523(a)(8)(A). Therefore, the seven-year nondischargeability period is calculated by determining the amount of time between the date the loan became due and the date the borrower filed bankruptcy, then subtracting the amount of time during which any "applicable suspension" periods were in effect.

In this case, Debtor's student loan became due on July 5, 1987. She filed her current Chapter 13 bankruptcy petition on July 22, 1994, slightly more than seven years after the loan became due. However, during her previous Chapter 7 bankruptcy in 1988, an automatic stay was in effect and prevented the Commonwealth from taking any action to collect the loan, and Debtor did not make any payments on the loan during this period. If the time during which her Chapter 7 bankruptcy petition was pending is an "applicable suspension" period under 11 U.S.C. § 523(a)(8)(A), the seven-year nondischargeability period had not expired when Debtor filed the current Chapter 13 petition, and the loans are not dischargeable. If the Chapter 7 automatic stay was not an "applicable suspension," the loans are dischargeable.

The bankruptcy court found that the Chapter 7 automatic stay was not an applicable suspension because it believed that the statute covers only suspensions granted in the ordinary course of business. *See Gibson v. State Educ. Assistance Auth.*, 177 B.R. 837, 839 (Bkrtcy.E.D.Va.1995). Appellant argues that the term "applicable suspension" should be construed broadly to include any period during which the original payment schedule ceases or is modified. Appellee maintains that "applicable suspension" period means suspensions of payments pursuant to the par-

ties' loan agreement. This Court addresses whether the bankruptcy court's narrow interpretation of the term "applicable suspension" is supported by case law and consistent with congressional intent.

## A. Case Law

Only one case addresses the issue of whether an automatic stay tolls the nondischargeability period for student loans. *Saburah v. United States Department of Education,* 136 B.R. 246 (Bkrtcy.C.D.Cal.1992). *Saburah* involved a debtor who filed a Chapter 7 petition seeking to discharge her student loans. Six years earlier, the debtor had filed another Chapter 7. *Id.* at 248. Although the court could not determine from the evidence exactly how long the automatic stay had been in effect in the previous Chapter 7, it held that "the length of time that the Stay was in effect in the Prior Chapter 7 is includable when calculating the suspension period under Section 523(a)(8)(A)" because the automatic stay prevented the lender from taking any action to collect payments on the student loans. *Id.* at 254.

Although only the *Saburah* court has addressed whether an automatic stay constitutes an applicable suspension period, other courts that have considered the meaning of "applicable suspension" have interpreted the term broadly. *See, e.g., Eckles v. Wisconsin Higher Educ. Corp. (In re Eckles),* 52 B.R. 433 (E.D.Wis.1985); *Huber v. Marine Midland Bank (In re Huber),* 169 B.R. 82 (Bkrtcy.W.D.N.Y.1994); *In re Shryock,* 102 B.R. 217 (Bkrtcy.D.Kan.1989). In *Eckles,* the district court determined that a three-month period during which the lender granted a reduction in payments was an applicable suspension period. The court observed that section 523(a)(8) attempted to strike a balance between concern for the debtor's ability to repay the loan and concern for the continued viability of the student loan program. *Id.* at 435. The court in *Eckles* recognized that Congress was concerned with the first five years [1] of a repayment period running without the borrower having an actual repayment obligation during the entire period. *Id.*

The court found that a period during which the debtor made reduced payments was an applicable suspension period because "[t]o rule otherwise would allow debtors to manipulate the amount of money they must repay before they file for bankruptcy." *Id.* The bankruptcy court in *Shryock* followed the *Eckles* court's reasoning, holding that an informal agreement between the borrower and lender to modify payments was a suspension of the repayment period under 523(a)(8)(A). The bankruptcy court acknowledged that "[t]he term 'suspension' has been broadly interpreted by the courts to include any time the original repayment period is set aside either by cessation of payments or modification of payments." *Shryock,* 102 B.R. at 219.

Recently, the bankruptcy court in *Huber,* 169 B.R. 82, held that a borrower's deferment periods were "applicable suspensions" of the repayment period, even though the borrower was not legally entitled to the deferments. The court interpreted section 523(a)(8)(A) as follows:

> "Applicable" means applying to these loans, as opposed to applying to others of the many loans any student might obtain in succession, over many years of schooling. "Suspension of the repayment period" means extending the term, such as by granting a period (by agreement, by court order, *by operation of law,* etc.) during which the Debtor is not obligated to make payments.

*Id.* at 84 (emphasis added).

In *Georgina v. Higher Education Assistance Foundation (In re Georgina),* 124 B.R. 562, 564 (Bkrtcy.W.D.Mo.1991), the bankruptcy court relied on language contained in the legislative history of section 523(a)(8)(A) to determine whether forbearance periods requested by the debtor and granted by the lender constituted "applicable suspension periods." The bankruptcy court noted that the legislative history expresses Congress' intent exclude student loans from discharge until such loans have been "due and owing" for five years. The court reasoned that while the loans were in forbearance, they were "owing," but not "due," and therefore this

---

[1] The original version of the statute provided for a five-year nondischargeability period for student loans. Congress subsequently extended this period to seven years.

time period should not be included in the five-year nondischargeability period. *Id.* at 564. Applying this reasoning to the case at bar, the automatic stay would constitute an "applicable suspension" because, during the time the stay was in effect, Debtor's loans were owing, but not due.

The only cases in which courts have found that a cessation of payments was not an "applicable suspension" are cases involving unilateral action by the lender. *See, e.g., Brinzer v. Pennsylvania State Univ. (In re Brinzer),* 45 B.R. 831 (S.D.W.Va.1984) (when the lender unilaterally revised payment schedule, the due date as originally specified by the note was controlling for calculating nondischargeability period); *Whitehead v. State of Ohio, University of Cincinnati (In re Whitehead),* 31 B.R. 381 (Bkrtcy.S.D.Ohio, 1983) (period during which the lender unilaterally granted borrower a deferment for "extraordinary circumstances" did not toll five-year nondischargeability period); *Crumley v. Hope College,* 21 B.R. 170 (Bkrtcy.E.D.Tenn. 1982) (when lender unilaterally granted deferment, deferment did not constitute "applicable suspension" of repayment period). The rationale behind this exception is that the borrower should not be penalized for the lender's extension of the payment period, when the borrower did not request such an extension. In the case at bar, however, *the borrower* unilaterally suspended the payments by filing a Chapter 7 petition in 1988. There was absolutely no unilateral action by the lender in this regard and the lender was bound by the automatic stay not to proceed with collection of the debt during the pendency of this 1988 Chapter 7 proceeding.

*B. Statutory Interpretation*

 Courts should look beyond the plain meaning of a statute "only in those rare instances in which there is a clearly expressed legislative intent to the contrary, ... in which a literal application of the statute would thwart its obvious purpose." *In re Maxway Corp.,* 27 F.3d 980 (4th Cir.1994) (citation omitted). This case requires no look beyond the plain meaning of the statute because the plain meaning of section 523(a)(8)(A) is that periods during which the borrower stops making payments should not be included in the seven-year nondischargeability period. *See Huber,* 169 B.R. at 84. In other words, a borrower must make seven years' worth of payments on the student loans before such loans may be discharged in bankruptcy. *See Eckles,* 52 B.R. at 434. This interpretation is entirely consistent with Congress' purpose in enacting the statute, which was to prevent student borrowers from escaping repayment of their loans. *See* S.Rep. No. 230, 96th Cong., 1st Sess. (1979), *reprinted in* 1979 U.S.C.C.A.N. 936, 937–38; 125 Cong.Rec. S9160 (daily ed. July 11, 1979) (remarks of Sen. DeConcini).

Furthermore, the legislative history of section 523(a)(8)(A) expresses no intent to restrict the term "applicable suspension" to forbearances and deferments. According to the legislative history, the statute "excerpts [sic] from discharge student loans until such loans have been due and owing for five years." S.Rep. No. 989, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865. In 1979, Congress amended the section to "exclude periods of deferment from the calculation of the first five years of the repayment period." The legislative history of this amendment discusses the potential problem of borrowers obtaining deferments under the loan terms, and thereby partially or entirely avoiding payments during section 523(a)(8)(A)'s nondischargeability period. However, the legislative history expresses no intent to limit tolling of the nondischargeability period to deferments under the loan agreement. *See* S.Rep. No. 230, 96th Cong., 1st Sess. (1979), *reprinted in* 1979 U.S.C.C.A.N. 936, 937–38. In fact, to limit application of the statute to those situations would thwart Congress' purpose by allowing the nondischargeability period to run when the borrower ceases payments pursuant to an automatic stay, "without the student having an actual repayment obligation during all of that period." *Id.* This Court finds no indication that Congress intended to limit "applicable suspension" periods to deferments or forbearances granted under the terms of the loan agreement and, therefore, refuses to read such a limitation into the statute. Finally, to read such a limitation into the statute would be in direct conflict

with the purpose of section 523(a)(8)(A), to exclude "suspension periods" from the seven-year nondischargeability period for student loans.

### IV. Conclusion

After carefully examining the statute, the case law and the legislative history, this Court holds that the automatic stay during the 1988 bankruptcy proceeding was an "applicable suspension of the repayment period" that tolled the nondischargeability period. The debtor did not make the equivalent of seven years' payments on her student loans, and, therefore, the loans are not dischargeable in her current bankruptcy proceeding. Accordingly, the bankruptcy court's order of February 9, 1995, is REVERSED.

It is so ORDERED.