284 N.J. Super. 603 (1995)
666 A.2d 173
NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, PLAINTIFF-APPELLANT,
v.
ROY M. LUCIANNA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 12, 1995.
Decided October 20, 1995.
*605 Before Judges DREIER, KESTIN and CUFF.
Solomon & Solomon, attorneys for appellant (Melgene D. Castillo, on the brief).
William R. Lindsley, attorney for respondent (Mr. Lindsley, on the brief).
The opinion of the court was delivered by DREIER, P.J.A.D.
Plaintiff appeals from an order dismissing its complaint for reimbursement of funds advanced after defendant's default on his student loans. Plaintiff was the guarantor of two student loans made by Chase Manhattan Bank to defendant in 1980 and 1981 in the total amount of $7,500. Upon defendant's default, plaintiff paid the amount due and sought reimbursement from defendant. On October 28, 1987, defendant filed voluntary bankruptcy under Chapter 7 of the Bankruptcy Code. After listing plaintiff as a creditor on his schedule of debts, defendant received a discharge in bankruptcy on March 7, 1988. On February 14, 1994, plaintiff instituted this action. Defendant raised the affirmative defense of a discharge in bankruptcy and moved for summary judgment. On February 3, 1995, the trial judge dismissed the case. Plaintiff filed this timely appeal.
The proceeds from defendant's student loans from Chase Manhattan Bank were applied to his graduate education at Columbia University in the fall semesters of 1980 and 1981. The terms of the loan required the borrower to provide notice to the lender no later than four months after the borrower "cease[d] being matriculated or at least a half-time student." The borrower was then required to sign a repayment note in which the repayment period would begin at the end of the ninth month following the month in which the borrower ceased to be so matriculated. In this case, defendant withdrew from school in December 1981, within two *606 months of obtaining the second loan. He filed his bankruptcy petition on October 28, 1987. This was more than five years following the date his first payment would have been due if the date of his withdrawal was the operative date for repayment, but less than five years if the date of his anticipated graduation was the triggering date.
This case turns on a single point, a mixed question of law and fact. At the time of this transaction, the Bankruptcy Code, 11 U.S.C.A. § 523(a)(8)(A), exempted from the discharge provisions of a Chapter 7 proceeding a governmentally insured or guaranteed education loan that first became due within five years of the filing of the bankruptcy petition.[1] If we read the provisions in the interim note requiring notice when a student withdraws from the university as extending the initial payment date, then defendant's discharge in bankruptcy was ineffective to terminate these obligations. If, on the other hand, we read the note restrictively against the bank and guarantor, then the obligations were discharged.
The initial loan agreements between Chase Manhattan Bank and defendant were written in the form of interim promissory notes which preceded the anticipated signing of repayment notes following graduation or discontinuance of the student's education. As noted earlier, there was a provision requiring the borrower to *607 repay the loan at "the end of the ninth month following the month in which [the borrower ceased] to be matriculated, [withdrew] from or [became] less than a half-time student at an approved school." The borrower also assumed an affirmative duty to notify the bank of such withdrawal and sign the new note. The agreement specifically provided that: "No later than four months after I cease being matriculated or at least a half-time student I will contact the lending institution to sign a Repayment Promissory Note."
In this case, when defendant withdrew from Columbia University he gave no notice to the bank or guarantor. By defendant's failure to contact the bank or plaintiff, they were led to believe that defendant was adhering to his scheduled completion of his education in May 1982, generating an expected first payment nine months later. In fact, plaintiff, in reliance upon the lack of notice, scheduled the first payment to be received in February 1983. Therefore, when plaintiff received the bankruptcy notice scheduling the debt based upon defendant's October 1987 filing, it appeared that the filing was within the prohibited five-year period, rendering the loan nondischargeable under the provisions of 11 U.S.C.A. § 523(a)(8)(A), quoted earlier. There thus was no reason for plaintiff to object to the entry of the order which affected only dischargeable debts.
The parties agreed that New York law would govern their relationship. Also, there is no question that, except in the area of certain fraud claims, state courts have concurrent jurisdiction with the federal courts to determine the dischargeability of debts enumerated in 11 U.S.C.A. § 523(a).
It is well established that the effect of a discharge may be subsequently litigated in any forum and that the usual practice has been to allow the discharged bankrupt to plead his discharge where he is sued.
[In re Craig, 56 B.R. 479, 481 (Bankr.W.D.Mo. 1985) (quoting Robertson v. Interstate Sec. Co., 435 F.2d 784, 786 (8th Cir.1971)).]
See also In re Marriage of Henderson, 225 Cal. App.3d 531, 275 Cal. Rptr. 226, 228 (Cal.Ct.App. 1990) (holding creditor of debt not automatically dischargeable under the Code may bring suit in *608 state court); Massachusetts Higher Educ. Assistance Corp. v. Taylor, 390 Mass. 755, 459 N.E.2d 807, 812 (1984) (reasoning that because student loans are not automatically dischargeable, fact that creditor of student loans did not appear in bankruptcy proceeding to contest dischargeability did not bar creditor from bringing subsequent action in state court); Pennsylvania Higher Educ. Assistance Agency v. Kaufman, 9 B.R. 755 (Bankr.E.D.Pa. 1981); State v. Wilkes, 41 N.Y.2d 655, 394 N.Y.S.2d 849, 363 N.E.2d 555 (1977); State v. Perkins, 112 A.D.2d 485, 490 N.Y.S.2d 900 (1985); State of New York Higher Educ. Serv. Corp. v. Quell, 104 A.D.2d 11, 482 N.Y.S.2d 373 (1984). But see George Washington Univ. v. Galdi, 475 A.2d 1130, 1134-35 (D.C. 1984). Interpretation of promissory notes in this setting is a matter of State law. See Chisari v. Florida Dept. of Educ., 183 B.R. 963, 967 (Bankr. M.C.Fla. 1995).
Where an ambiguity exists, we ordinarily construe a written agreement against the preparer, here the bank and guarantor. In re Kennedy Mortgage Co., 23 B.R. 466, 473 (Bankr. D.N.J. 1982) (loan agreement); see also In re Miller's Estate, 90 N.J. 210, 221, 447 A.2d 549 (1982) (documents transferring an interest in royalties); Terminal Constr. Corp. v. Bergen County Hackensack River Sanitary Sewer Dist. Auth., 18 N.J. 294, 302, 113 A.2d 787 (1955) (sewerage disposal contracts); Jennings v. Pinto, 5 N.J. 562, 569, 76 A.2d 669 (1950) (sales agreement).[2] However, such a construction here would work an injustice permitting defendant to profit by his breach of the notice provision. We take notice that it is a virtual impossibility for banks engaged in making student loans or for state agency guarantors to police the many thousands of borrowers to determine which students are still in school and which have withdrawn before graduation. Even upon receipt of a bankruptcy notice, a bank or guarantor cannot be expected to initiate an investigation of each student's status. *609 The student is obligated by the loan agreement to keep the lender and guarantor apprised. Absent express notice by the student, the lender and guarantor, in turn, have a right to rely upon the dates of anticipated graduation set forth in the loan agreement and the date of filing of the bankruptcy petition to determine whether they need to expend the time and money required to object to a bankruptcy discharge.
Our conclusion is in accordance with the weight of authority. In Pennsylvania Higher Educ. Assistance Agency v. Kaufman, supra, the debtor's undergraduate loan was deferred after he made three payments because he entered graduate school. He stated that he expected to graduate in May 1977, but withdrew after one semester and failed to inform the lender of his new status. After the anticipated graduation date, he signed the repayment note, but then filed for bankruptcy. He claimed that only the one semester period that he actually attended graduate school should be counted to toll the five-year period applicable to his undergraduate note, and thus he urged that the statutory five years had elapsed rendering the undergraduate debt dischargeable under 11 U.S.C.A. § 523(a)(8)(A). The bankruptcy court agreed with the lender's argument that because the debtor had never notified the lender of the termination of his graduate studies the lender was entitled to rely on the May 1977 anticipated date of graduation. The court found that the bank had relied upon the debtor's "expected graduation date and received no communication from him that he had discontinued studies prior to that date, despite his signed agreement on the March 17 Promissory Note to advise the bank of any changes in his school enrollment status." 9 B.R. at 758. The court concluded that the "debtor received a suspension of the repayment on his original loan" for the full anticipated graduate program, rather than the single semester actually attended. Ibid. The loan, therefore, was found nondischargeable. Although the debtor here argues that Kaufman is distinguishable because of the requested deferment of payments during graduate school, the Kaufman court makes no reference to the deferment in reaching its decision. See also Chisari v. Florida Dept. of *610 Educ., supra, 183 B.R. at 968 (dictum, stating that the guarantor could optionally declare the lack of notice as creating a default, or wait until the anticipated graduation date.)
Although there are no New York or New Jersey cases directly on point and the New York cases cited earlier are distinguishable on their facts, their underlying principles are in accord with those of Kaufman. In State v. Wilkes, supra, the debt was held to be contingent because of the possibility of the debtor teaching in programs that would suspend his repayment obligation. 394 N.Y.S.2d at 850-51, 363 N.E.2d at 556-57. It also appeared "that the bankruptcy petition was filed solely to avoid repayment of student loans." Id. at 850, 363 N.E.2d at 556. The court concluded:
Deciding whether a claim is sufficiently definite to be provable under the Bankruptcy Act is often difficult. The statute provides guidance that is, at best, vague. Much depends on the circumstances. In this kind of case, allowing discharge would thwart the purposes of student loan programs. Discharge in this case, then, would be out of harmony with the basic purpose of the Bankruptcy Act, which is to relieve honest debtors of the crushing burdens of heavy debt. No such burdens attend this debtor.
[Id. at 852, 363 N.E.2d at 558 (citation omitted).]
So too in our case. Here defendant failed to deal with the bank and guarantor in good faith. Defendant does not appear to be one of the "honest debtors" to be relieved of his student loan obligation.
Other cases have held that deferment periods requested by a borrower cannot be used to calculate the time necessary to bar collection. See Huber v. Marine Midland Bank, N.A., 169 B.R. 82 (Bankr.W.D.N.Y. 1994). The bankruptcy judge there found it inequitable to allow a borrower who requested deferments of student loan payments to be permitted to exclude them when determining the date of repayment.
[T]he Debtor's argument lacks equity: a period of deferment is (by definition) a period during which the lender may not seek collection, and it would therefore be an odd and inequitable result if a party who forebears collection activity at the borrower's request were to be held time-barred from collection as a consequence.
[169 B.R. at 86].
*611 See also In re Georgina, 124 B.R. 562, 564 (Bankr.W.D.Mo. 1991) (loans during nine deferment periods are "owed" but not "due" and constitute an applicable suspension); Barciz v. Farmers Citizens Bank, 123 B.R. 771, 774 (Bankr.N.D.Ohio 1990) (forbearance agreements are part of a "bright-line rule" for applicable suspensions); In re Shryock, 102 B.R. 217, 218 (Bankr.D.Kan. 1989) (modification agreement to pay interest only). The same logic applies in the case before us. Rather than our recognizing a period of forbearance as in Huber, we have in effect tolled the statutory five-year (now seven-year) period during the time the borrower withheld from the lender and guarantor the contractually-required notice that he had withdrawn from the university.
The summary judgment from which plaintiff appealed is reversed, and the matter is remanded to the Law Division for the entry of judgment in accordance with this opinion.
NOTES
[1] According to 11 U.S.C.A. § 523(a)(8)(A) as it read at the time of this transaction:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt 
(8) for an educational loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless 
(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition.
[11 U.S.C.A. § 523(a)(8)(A).]
This section of the code was amended November 29, 1990 to increase the age of a dischargeable loan from five years to seven years. The seven-year period is inapplicable to this case.
[2] New York law is not urged to be otherwise. We therefore have cited to New Jersey law. Evid.R. 201; Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 673, 506 A.2d 817 (App.Div. 1986) (interpreting former Evid.R. 9(2) and (3)).