**In re Juanita J. MOODY, Debtor.**

**Juanita J. MOODY, Plaintiff,**

**v.**

**ECMC, INC., Defendant.**

**Bankruptcy No. 96–30050.**

**Adversary No. 96–3053.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Nov. 6, 1996.

Scott G. Stout, Trotwood, OH, for Plaintiff/Debtor.

Eileen Field, Harris, Harris & Field, Cincinnati, OH, for Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILLIAM A. CLARK, Chief Judge.

On March 19, 1996, Plaintiff/Debtor Juanita J. Moody filed an adversary proceeding against Defendant ECMC, Inc., to determine the dischargeability of the student loan debt owed by the Plaintiff to the Defendant. This matter is currently before the court upon the Defendant's motion for summary judgment. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I)—determinations as to the dischargeability of particular debts.

### UNDISPUTED FACTS

The following facts are set forth in the Defendant's motion for summary judgment and are expressly not disputed by the plaintiff:

On or about January 9, 1986, Plaintiff Juanita Moody executed a promissory note payable to the Norwest Bank South Dakota in the principal amount of $ 2,500.00 for a guaranteed student loan (herein the "First Note").... On or about October 27, 1986, Plaintiff executed a second promissory note payable to Florida Federal Savings and Loan Association in the principal amount of $ 1,000.00 (herein the "Second Note").... Both notes provide for

interest at a rate of 8% per annum and require Plaintiff to pay reasonable collection costs and attorney's fees. . . .

The student loans were made to Plaintiff under a program funded by the federal government, the Federal Family Education Loan Program "FFELP" (formerly known as the Guaranteed Student Loan Program). . . . ECMC is a guaranty agency under the FFELP and the loans are reinsured by the U.S. Department of Education. The notes were originally guaranteed by the Higher Education Assistance Foundation "HEAF". . . .

According to the promissory notes, Plaintiff attended Dret School to study word processing. Plaintiff separated from school on December 15, 1986, and entered a six month grace period which expired on June 15, 1987. . . . Therefore, the first payment on the First Note was due on July 20, 1987. . . .

According to the loan history for the Second Note, Plaintiff's school separation date for the Second Note was December 28, 1986, and the six month grace period expired on June 28, 1987. . . . The first payment for the Second Note was due on July 28, 1987. . . .

The loan history states that Plaintiff did not make any payments on either of the notes and was declared in default. . . . Pursuant to the guarantee on the notes, HEAF, the previous guarantor of the loans, paid the lenders for the outstanding principal and interest due on the notes. On May 21, 1988, HEAF paid Norwest Bank $2,686.72. On July 17, 1988, HEAF paid Florida Federal $1,084.33. HEAF ceased business operations as of December 31, 1993, and transferred Plaintiff's notes to the U.S. Department of Education "DOE" sometime before that date. The DOE assigned the notes to ECMC on February 17, 1995. . . .

Plaintiff had previously filed a chapter 13 bankruptcy, case number 94–31178, in this court on April 11, 1994. Plaintiff was under the protection of the automatic stay from April 11, 1994, through December 6, 1995. Plaintiff's chapter 13 was dismissed on [December 6, 1995]. . . .

On January 5, 1996, one month after her chapter 13 dismissal, Plaintiff filed a chapter 7 bankruptcy, case number 96–30050, in this court. She received a chapter 7 discharge on May 10, 1996. At the time Plaintiff filed her chapter 7 bankruptcy, the student loans in question had been in repayment for six years and nine months. The aggregate unpaid principal, interest and fees due under the notes is $5,191.87 as of June 28, 1996. Interest continues to accrue under the notes at 8% per annum. Doc. # 6 at 2–4.

In a supplemental affidavit, unrebutted by the plaintiff, Jodean A. Thronson (an employee of the defendant) states that with respect to the Debtor's previous chapter 13 case that "no payments have been made on this debt by the chapter 13 trustee." Doc. # 9.

## CONCLUSIONS OF LAW

With respect to the dischargeability of student loans, the Bankruptcy Code provides that a discharge under section 727 does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (*exclusive of any applicable suspension of the repayment period*) before the date of the filing of the petition. . . .

11 U.S.C. § 523(a)(8) (emphasis supplied).

The sole issue before the court is whether the time spent by the plaintiff/debtor in her prior chapter 13 bankruptcy proceeding constitutes an "applicable suspension of the repayment period" under § 523(a)(8)(A).

With the enactment of § 523(a)(8) in 1978, Congress expressed its "concern that student loans should not be dischargeable without some effort on the debtor's part to repay the loan." *Williams v. U.S. Dept. Of Educ. (In*

*re Williams* ), 195 B.R. 644, 646–647 (Bankr. N.D.Tex.1996).

> The Committee bill seeks to eliminate the defense of bankruptcy for a five-year period, to avoid the situation where a student, upon graduation, files for a discharge of his loan obligation in bankruptcy, then enters upon his working career free of the debt he rightfully owes. After a five-year period, an individual who has been faithfully repaying his loan may really become bankrupt. He should not be denied this right, and is not under the Committee bill.

S.Rep. No. 882, 94th Cong., 2d Sess. 32 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4713, 4744.

As originally enacted,[1] § 523(a)(8) contained no reference to a suspension of the repayment period of a student loan. Shortly thereafter, Congress amended § 523(a)(8):

> In 1979, the Senate Committee addressed the issue of the suspension of repayment obligations: "Section 3(2) of the bill would also amend 11 U.S.C. 523(a)(8) *to exclude periods of deferment from the calculation of the first five years of the repayment period.*" S.Rep. No. 230, 96th Cong., 1st Sess. 2 (1979), *reprinted in* 1979 U.S.C.C.A.N. 936, 937 (emphasis added). Here Congress shows its concern that a debtor should not be able to manipulate deferments in order to defeat the five year period required before a student loan could be discharged. Noting that student loans are subject to deferment, the committee acted to remove time under a deferment from the calculation of the five year period before a student loan could be discharged.

> In 1990 Congress amended § 523(a)(8)(A) of the Code to extend the required period from five to seven years before a discharge in bankruptcy of stu-

dent loans could be granted. Pub.L. 101–647, § 3621(2), 104 Stat. 4965.

*In re Williams, supra,* 195 B.R. at 647.

In its motion for summary judgment, the defendant asserts that the automatic stay of § 362[2] of the Bankruptcy Code, which arose upon the debtor filing her chapter 13 petition and prevented the defendant from pursuing collection activities against the debtor, constituted an "applicable suspension" under § 523(a)(8) of the Bankruptcy Code. In *Saburah v. U.S. Dept. Of Educ. (In re Saburah* ), 136 B.R. 246, 254 (Bankr.C.D.Cal. 1992), the court concluded "as a matter of law that the length of the time that the stay was in effect in the prior chapter 7 is includable when calculating the applicable suspension period under section 523(a)(8)(A)."

The district court in *Commonwealth of Virginia v. Gibson (In re Gibson* ), 184 B.R. 716, 719–720 (W.D.Va.1995), *aff'd,* 86 F.3d 1150 (4th Cir.1996), also held that the automatic stay during a previous bankruptcy proceeding was an "applicable suspension of the repayment period."

> [T]he plain meaning of section 523(a)(8)(A) is that periods during which the borrower stops making payments should not be included in the seven-year nondischargeability period. *See Huber,* 169 B.R. at 84. In other words, a borrower must make seven years' worth of payments on the student loans before such loans may be discharged in bankruptcy. *See Eckles,* 52 B.R. at 434. This interpretation is entirely consistent with Congress' purpose in enacting the statute, which was to prevent student borrowers from escaping repayment of their loans (citation omitted).

> .... This Court finds no indication that Congress intended to limit "applicable suspension" periods to deferments or forbearances granted under the terms of the loan

---

**1.** "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

> ....

> (8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—

> (A) such loan first became due before five years before the date of the filing of the petition".....

11 U.S.C. § 523(a)(8)(A) (1978).

**2.** "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978).

agreement and, therefore, refuses to read such a limitation into the statute. Finally, to read such a limitation into the statute would be in direct conflict with the purpose of section 523(a)(8)(A), to exclude "suspension periods" from the seven-year nondischargeability period for student loans.

Finally, in *Williams v. U.S. Dept. of Educ.* (*In re Williams*), 195 B.R. 644, 648 (Bankr. N.D.Tex.1996), the court found that:

> In sum, the majority of cases from both bankruptcy and district courts suggest that an interpretation of the phrase "applicable suspension" in § 523(a)(8)(A) refers to a valid period of nonpayment by the debtor. Filing a voluntary bankruptcy, with the restrictions of the automatic stay, is an "applicable suspension" contemplated by the statute.
>
> . . . .
>
> In this case the Debtor initiated a bankruptcy which caused her student loan debt to be uncollectible for the time that the automatic stay was in effect. Although there was a period of seven years, five months and eighteen days between the time the loans first became due and the filing of the present bankruptcy, the four years, three months and twenty five days that the automatic stay of the previous bankruptcy was in effect was an applicable suspension that tolled the running of the statute.

Plaintiff/debtor points out that the case law discussed above involves chapter 7 cases, and that the instant case is concerned with whether time spent in a chapter 13 proceeding should constitute an "applicable suspension":

> These situations [chapter 7 cases] are clearly different than the matter before the court. During a chapter 7 bankruptcy, the stay prevents any collection activity and therefore, while the debt is still owing, it is not yet due. While a chapter 13 bankruptcy stay prevents collection activity the debt is both due and is owing—i.e., it is being paid pursuant to the chapter 13 plan.

Doc. # 8 at 5.

The plaintiff/debtor also contends that:

—to find that any cessation of payments by the debtor or any time the debtor could not make a full payment triggers a suspension could not be Congress' intent as to an applicable suspension. "To follow this reasoning would render 11 U.S.C. § 523(a)(8)(A) meaningless as any nonpayment, compromised payment or default would continue the seven year time period indefinitely." Doc. # 8 at 5.

—the suspension within the meaning of § 523(a)(8)(A) must be read as having a meaning that is defined essentially in terms of requested deferment of payment due dates.

With respect to "requesting" a deferment of payment due dates, it is quite clear that by a filing a petition in bankruptcy and seeking protection from her creditors the debtor has requested a deferment of payments.

Debtor's contention that her debt to the defendant is "both due and owing" because the defendant is being paid pursuant to the chapter 13 plan seeks to make a distinction that is of questionable utility. In the first place, the statute makes no reference to a debt that is "due and owing." It simply refers to student loans that "first became due more than 7 years" before the date of the filing of the debtor's petition in bankruptcy, and excludes periods where the repayment period has been suspended. Secondly, and more importantly, in the instant case the defendant did not receive any distributions under the debtor's chapter 13 plan. So far as the defendant was concerned, the debtor's chapter 13 case was the functional equivalent of a chapter 7 case. As a result, this court can discern no basis for not adopting the reasoning of those cases finding that the automatic stay of § 362 constitutes an "applicable suspension of the repayment period" under § 523(a)(8). Among its more common usages, "suspend" means "to cause to stop temporarily" or "to stop payment or fail to meet obligations." *Webster's New Collegiate Dictionary* (1981). Judicially, a period of deferment has been defined as a period during which the lender may not seek collection. *Huber v. Marine Midland Bank, N.A.* (*In re Huber*), 169 B.R. 82, 86 (Bankr.W.D.N.Y. 1994). Under either definition, the time this

debtor spent in her previous chapter 13 case resulted in a suspension of the repayment period.[3]

For the foregoing reasons it is hereby ORDERED that the defendant's motion for summary judgment is GRANTED.

---

**3.** Because of the facts of this case, the court need not reach the question of whether there is a suspension of the repayment period when a creditor receives distributions in a chapter 13 case. The court notes, however, that it has been found "that any time the original repayment period is set aside either by cessation of payments *or modification of payments* the repayment period has been suspended." *Eckles v. Wisconsin Higher Education Corp.* (*In re Eckles*), 52 B.R. 433, 435 (E.D.Wisc.1985).